BLANCHE G. BYRNE *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.     December 11, 1907. — May 18, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence*, In use of highway, Street railway. *Practice, Civil*, Conduct of trial.

At the trial of an action against a street railway company to recover for personal injuries alleged to have been received by the plaintiff, a woman, by reason of her being run into by a car of the defendant while she was crossing a street in a city upon a crosswalk, it appeared that the crosswalk was under the structure of an elevated railway which was supported by two lines of upright pillars in the street, that there were many parallel tracks in the street running northerly and southerly, some of them railroad and some of them street railway tracks, and that, about at the crosswalk, there was a switch from which street car tracks ran westerly into an intersecting street. The plaintiff's evidence tended to show that there was much confusion in the street at the time of the accident, caused by passing drays and street cars, that she and her mother and a companion had taken a south bound car at the crosswalk, but, finding it crowded, had caused it to be stopped before it got fairly under way, and had got off, that, as she left the car, the plaintiff looked northerly on the street and "around in the range of vision" and, she seeing no car, the three started to return to the easterly sidewalk, that she did not again look to see whether a car was approaching, that they had crossed the track upon which south bound cars ran, but were standing near it waiting for a north bound car to pass in front of them, when the

plaintiff was struck by a car from behind which might have approached from the intersecting street. The plaintiff testified that, in standing where she did, she was not giving any thought at all to how near she was to the track or whether she was in danger of being hit. It appeared that the space, upon which the plaintiff was standing between the tracks for the north bound and those for the south bound cars, was nine feet wide from inner rail to inner rail. *Held*, that, as a matter of law, the plaintiff was guilty of negligence which contributed to her injury.

After the arguments of counsel and the charge by the judge at a trial, the jury retired and the court was adjourned. After a time, the jury failing to reach a verdict, the presiding judge, without sending for counsel, called in the jury, at their request read to them portions of the evidence, and further charged them, urging them to come to an agreement. The jury again retired and, at an hour set by the judge, were allowed to disperse to their homes without having reached a verdict. After the opening of court the next morning, the jury having reported to the presiding judge that they were unable to agree, he directed them to return a verdict for the defendant. On all the evidence, the plaintiff was not entitled to recover. *Held*, that the presiding judge acted within his powers, since, until a verdict was rendered, he had full control of the case.

TORT for personal injuries alleged to have been received by the plaintiff by reason of her having been run into and knocked down by a street car of the defendant. Writ in the Superior Court for the county of Suffolk dated August 20, 1902.

There was a trial before *Richardson*, J. It appeared that the plaintiff was injured while standing between the north bound and the south bound street car tracks on Atlantic Avenue on the crosswalk in front of the station of the Boston, Revere Beach and Lynn Railroad, as shown on the plan on page 446.

Besides the facts stated in the opinion, the witnesses for the plaintiff stated that, just before the plaintiff was struck by the car, she was carrying a pasteboard box about three feet long and over a foot wide under her right arm, and had reached out her left hand and placed it on the shoulder of her mother, who was in front of her, the plaintiff testifying that she wanted to ask her mother to wait for her, and that, "before she had so asked, she was on the ground." The plaintiff also testified in cross-examination that she had no knowledge of a car striking her at all, but that she drew that inference from what happened. The plaintiff's evidence also tended to show that there was much noise and confusion in the neighborhood, due to passing drays and street cars. Other facts are stated in the opinion.

At the close of all the evidence, the defendant asked that a verdict be directed in its favor, but the presiding judge refused

to do so and submitted the case to the jury after a charge to which no exception was taken. After the jury had been considering the case for some time, and after adjournment of the court, the presiding judge caused the jury to be brought in and, without notifying counsel, further charged them as follows:

"I notice, Mr. Foreman, that you do not agree, and I thought I would have you come in and see if I could aid you about any question that you may have, any question of law, if your diffi-

culty is over the question of law, or any instruction that was given by the court."

The Foreman: "There is no instructions in regard to the questions of law, it is really questions of fact."

The Presiding Judge: "I had at the time you went out some evidence of the plaintiff and her mother written out, and if you differ as to those facts, perhaps I could read from the testimony that is written out by the stenographer. I did have the intention to read to you some of the evidence which was taken the first day as to whether when they got off the first car they got on to, whether they got off there right at the crosswalk or whether before they got off they were carried down some and I

have what the plaintiff says about that if there is any difference of opinion or if you think that is of importance."

The Foreman: "I think if you would read the plaintiff's evidence and the mother's evidence."

The Presiding Judge: "I can't read it all but as it passes along it may throw some light upon disputed questions in the case. . . . [The presiding judge then read portions of the testimony.] . . . Is there any other disputed point of fact that you think I can clear up?"

The Foreman: "I think you have covered the point under discussion."

The Presiding Judge: "I have looked over the minutes since you were in. I think this is a case you ought to decide. It is one of the objections to our trial by jury that there are so many cases where the jury disagree and put the county to expense and all that. Of course we want to get verdicts if we can, and, of course, we want to get them right also. I don't know that I could add anything by restating the law which I stated, that is, if a person takes a position on or near a railroad track so near that he is in danger of being hit by a car without paying any attention to whether a car is coming or not, without looking out or taking any care as to the danger, as to the possibility of being hit, — if a person voluntarily stands in that position, I think the law is well settled in this State, and I think it is so most everywhere, that the person who does that is not in the exercise of due care. I say voluntarily — unless there is something which prevents such a person from stepping one side and getting out of danger. I can't help feeling that that is the law laid down in a great many cases.

"Of course, the defendant says that the plaintiff was not near enough to the car to be hit. If she was not, of course she was not hit, and, if she was not hit by the car and knocked down, of course the defendant is not liable. It does not follow that, if she was hit and knocked down by the car, the defendant was liable, because you may find that it was her duty under the law as I have stated it to have been more alert and more careful and more diligent to see whether a car was coming or not and to have stepped one side a little unless there was some reason why she could not."

The counsel for the plaintiff by chance entered the court room during the closing sentences of the foregoing charge, and, at its conclusion, excepted to the giving of the charge without notifying counsel. The defendant's counsel was not present.

The jury then again retired and resumed the consideration of the case. At an hour which previously had been fixed by the presiding judge in directions to an officer as a time when the jury should be allowed to separate in case they had not yet agreed as to a verdict, they announced their disagreement to the officer and were permitted to separate and go to their homes. On the following morning, upon their reporting their disagreement to the presiding judge at the opening of court, he directed them to bring in a verdict for the defendant, which verdict they immediately rendered.

The plaintiff duly excepted to the power or right of the court to direct a verdict after the jury had separated, and also excepted to the order of the presiding judge directing the jury to return a verdict for the defendant upon all the evidence.

*E. R. Anderson*, for the plaintiff.

*W. G. Thompson*, (*S. H. E. Freund* with him,) for the defendant.

LORING, J. The plaintiff's story in the case at bar is that with her mother and a Mrs. Small she crossed from the Boston, Revere Beach and Lynn Railroad station to take a car on the south bound track, being the second of the three tracks shown on the accompanying plan. They boarded a south bound car, but, finding it to be too crowded, had it stopped before it was fairly under way, and left it. On leaving it they passed around the rear end of that car and proceeded on the crosswalk to go back · to the sidewalk in front of the station of the Boston, Revere Beach and Lynn Railroad, to wait for another south bound car, and were stopped by a north bound car. While waiting for this car to get out of their way, the plaintiff, who was behind the other two, was knocked down and dragged by a car of the defendant on the south bound track coming from Broad Street or along Atlantic Avenue.

The defendant's witnesses testified that the plaintiff fell on the ice after more than half the south bound car (which the

plaintiff contended knocked her down) had passed her, and that she was not touched by that car at all.

The plaintiff testified in her own behalf and called in addition her mother and Mrs. Small, but no one else. Neither of them saw the car strike the plaintiff. The mother and Mrs. Small both testified that the first they knew of the accident was a scream from the plaintiff, that they then looked, and that she (the plaintiff) was then on the ground, being pushed by the south bound car. The plaintiff testified that she did not see the car strike her, but that she knew that she was struck and knocked down. Under the circumstances disclosed in the evidence, this would warrant a finding that she was struck by the south bound car, were it not for the testimony of the plaintiff as to the way she was struck. She was on the crosswalk at the time, between the north and south bound tracks, a space (according to the testimony) of nine feet four inches. She testified that she was thrown on to her back, landing on the base of her brain, and her first statement was that she was struck below her left breast by the front corner of the car. But when pressed on cross-examination with the fact that if she was struck on the left breast by the front corner of the car she must have been facing the car and so must have seen it coming, she changed her testimony and said, " I have said repeatedly I do not know where I was struck." But she did not change her testimony that she had a swelling below her left breast which was not made by the ground, and that she was thrown on to her back and landed on the base of her brain. All her witnesses testified that the plaintiff when on the ground was lying with her head and body between the north bound and the south bound tracks, and her feet in front of the wheels across the easterly rail of the south bound track, that is to say across the rail next to the Boston, Revere Beach and Lynn Railroad station.

It is inconceivable that the plaintiff should have been thrown in this way if her story is true that she was standing facing the Revere Beach station. But we do not need to dispose of the case on this ground, because we are of opinion that on her own evidence the plaintiff was negligent and that her negligence contributed to the injury.

Counsel for the defendant called her attention to the width

between the tracks, suggesting that it was eight feet, and she testified: " I wasn't considering the width of the space at all; I had no thought of it. — Q. Were you considering the danger of a car coming from somewhere on that track? A. No, sir. — Q. Did you consider there was any danger of being hit by a car if you stood near the track? A. I didn't suppose. — Q. Did you give any thought at all to how near you were to the track or whether you were in any danger of being hit? A. No, sir."

One who takes her stand between two tracks without considering how near she is to the rails and without considering the danger of being hit by a car coming on one of the tracks is as matter of law guilty of negligence.

The plaintiff's counsel urge that the jury were warranted in finding that she looked for a car when she alighted from the south bound car, and that this justified her in standing where she was as she testified that she did. At the time that she testified she looked for a car, the car which hit her must have been in sight. There is no evidence of obstruction to prevent her seeing it, and, if she looked carelessly, she is in the same situation as if she had not looked at all. *Fitzgerald* v. *Boston Elevated Railway*, 194 Mass. 242. To this her counsel also urge that she might have been misled by the fact that the south bound track runs on the outside of the posts of the elevated structure until it reaches the corner of Broad Street, and she may have thought that the westerly of the two tracks of the Union Freight Railroad north of Broad Street was the south bound track of the street car trucks, and, seeing no car on that track, that she was not negligent in assuming that no car was in sight. The plaintiff had lived in Winthrop sixteen summers and five winters, and for that reason was not a stranger to the locus. Moreover, her testimony is that she not only looked down Atlantic Avenue but "around in the range of vision," and her contention was that the car in question came down Broad Street; finally, she must have seen and known that the north bound track is entirely outside the posts of the elevated structure throughout this neighborhood.

Under all the circumstances, we are of opinion that, in standing where she did without considering how near she was to the

track, she was guilty of contributory negligence even although the jury were warranted in finding that she looked when she was going round the end of the car from which she alighted. A look which justifies a plaintiff in standing in the path of a car without looking again when she could have looked again without inconvenience must be a more careful one than one which justifies a plaintiff in walking across a track.

Until a verdict rendered by the jury has been accepted by the court, the judge has full control of the case; and, on a jury's reporting that they are unable to agree on a verdict, they may be directed by him to enter a verdict for one of the parties to the action. *Rainger* v. *Boston Mutual Life Association*, 167 Mass. 109.

*Exceptions overruled.*