### ALMORE H. HATCH *vs.* BOSTON AND NORTHERN STREET RAILWAY COMPANY.

Norfolk.    March 4, 1910. — March 23, 1910.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & RUGG, JJ.

*Negligence*, Street railway, Due care of plaintiff.

At the trial of an action against a street railway company for injuries caused by a collision between an electric street car of the defendant and a top buggy in which the plaintiff was driving, there was evidence tending to show that the collision occurred at about 9.30 P. M. on a July 31 upon a city street fifty or sixty feet wide running northerly and southerly with double street railway tracks in the middle, that just previous to the collision the plaintiff, driving in a southerly direction with the flap at the back of the buggy up so that he had an unobstructed view of the street and tracks behind him, stopped at the curbing on the westerly side of the street to allow a guest to alight, that thereafter he looked behind him and saw a car approaching at a distance of three or four hundred feet, struck the horse with a rein, turned his buggy toward the east and was crossing the street in a semicircle turning toward the south, when the car struck the buggy between the front and rear wheels, breaking the whiffletree and both front wheels, dishing the rear wheels, breaking the box and the top of the buggy and pushing the buggy along ten or twelve feet before the car came to a stop. The plaintiff testified that he did not remember whether he heard a bell or gong before the car struck the buggy, that he was familiar with the locality and knew that cars ran there every three or four, and sometimes every five or ten minutes, and that he could easily have seen up the track as he was crossing it. There was no evidence as to whether the gong of the car was sounded. There was evidence tending to show that the car at the time of the collision and immediately before was going very rapidly. *Held,* that it could not be said as matter of law that the plaintiff was not in the exercise of due care, or that the motorman was not negligent, and that the case was for the jury.

TORT for personal injuries and damage to the plaintiff's horse and buggy incurred in a collision upon Broadway in Chelsea

between an electric street car of the defendant and the plaintiff's buggy, which was alleged to have been caused by negligence of the defendant's motorman. Writ dated September 5, 1907.

The case was tried before *Bishop*, J. The facts are stated in the opinion. At the close of the plaintiff's evidence the defendant asked for a ruling that a verdict in its favor be ordered. The presiding judge refused to rule as requested and, the defendant having rested, after argument by counsel and a charge by the judge, the case was submitted to the jury at one o'clock in the afternoon. At two o'clock, having ascertained that the jury had failed to agree, the presiding judge recalled them and ordered a verdict for the defendant; and the plaintiff alleged exceptions, which, after the death of *Bishop*, J., were allowed by *Pierce*, J.

*E. M. Schwarzenberg*, for the plaintiff.

*G. Hoague*, for the defendant.

MORTON, J. The defendant does not contend that there was no evidence warranting a finding that the car which struck and injured the plaintiff was not operated by it. Its contentions are that the plaintiff was not in the exercise of due care, and that the motorman was not negligent.

The street was fifty or sixty feet wide, running northerly and southerly, and with double tracks in the middle. The plaintiff had drawn up to the curbing on the westerly side in order to allow his sister to alight. The flap in the back part of the buggy was rolled up and the plaintiff had an unobstructed view from the back of the buggy. After his sister had alighted he looked through the back of the buggy and saw a car upon the bridge about three or four hundred feet southerly from where he was. He hit the horse with the rein and immediately started to cross the tracks in a semicircular and southerly direction, so as to get on to the other side of the street. The horse was over the further track, with his hind feet possibly on the track, when the car struck the buggy, throwing the plaintiff out and causing the injuries complained of. The plaintiff testified that he did not look again after looking through the back of the buggy as he turned to cross the tracks. The accident happened about half past nine o'clock in the evening, on July 31, 1907.

The plaintiff would not say whether he heard a bell or gong

before the car struck the buggy; he did not remember. He was familiar with the locality and knew that cars ran sometimes every three or four minutes, and sometimes with an interval of five or ten minutes between, and he looked before he started to turn around because he appreciated that he might be hit by a car. When he crossed the first or westerly track his horse was pointing in a diagonal direction, partly towards the easterly curbing and partly towards the bridge, and he could very easily have seen up the track if he had wanted to and there was nothing to obstruct his view. There was testimony tending to show that the car was going very rapidly; and the plaintiff testified that it struck the buggy between the front and rear wheels, breaking the whiffletree and both front wheels, dishing the rear wheels, breaking the box and top of the buggy, and pushing the buggy along ten or twelve feet before it came to a stop.

On this evidence we think that the questions of the plaintiff's due care and the motorman's negligence were for the jury. The distance which the plaintiff had to go before he crossed the tracks was only thirty or forty feet, and it was for the jury to say whether he might not properly assume that he would have time to get across safely before the car would come along. It cannot be said as matter of law that with the car three or four hundred feet away he should have stopped and waited for it to go by, or that, though he could easily have seen the car if he had looked, he was not warranted in relying upon the look that he had given and the judgmen that he had formed before he started to cross. *Fallon* v. *Boston Elevated Railway*, 201 Mass. 179. *Jeddrey* v. *Boston & Northern Street Railway*, 198 Mass. 232. *Le Baron* v. *Old Colony Street Railway*, 197 Mass. 289. *Wood* v. *Boston Elevated Railway*, 188 Mass. 161.

As to the motorman there was testimony tending to show, as already observed, that the car was going very rapidly. This was corroborated by the details as to the damage done to the buggy and the distance which the buggy was pushed along before the car came to a stop. If it is true that there was no evidence that the gong was not sounded, it is equally true that there was no evidence that it was. The motorman had an unobstructed view of the track for several hundred feet, and, though it was

half past nine o'clock in the evening, it was in July, and there seems to have been no difficulty in distinguishing objects at a reasonable distance. The street was a much used public way, as stated in the defendant's brief, and if the motorman could not see clearly it was or could be found to be negligence on his part for him to send the car along very rapidly; and if he could see clearly there was, so far as appeared, no satisfactory explanation of the accident except that it was due to negligence on his part.

We think that the trial judge erred in directing a verdict for the defendant. The fact that he had submitted the case to the jury and that they had deliberated upon it for an hour or more without arriving at a verdict would not have operated to prevent him from recalling them and directing them to return a verdict for the defendant if the case had warranted it. *Byrne* v. *Boston Elevated Railway*, 198 Mass. 444.

*Exceptions sustained.*