FRANCIS A. O'BRIEN *vs.* BLUE HILL STREET RAILWAY COMPANY.

Suffolk.     March 7, 1904. — October 17, 1904.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Negligence*, On highway.

If the motorman of an electric car, coming around a bend in the road at a rate of speed not more than five or six miles an hour, sees a horse and wagon on the track at a point from two hundred and fifty to three hundred feet distant, and applying the brakes slackens the speed of the car and avoids a collision, but the horse being frightened plunges in front of the car and runs across the street into a telephone pole, injuring himself and the driver and demolishing the wagon, there is nothing to show negligence on the part of the motorman.

TORT for injuries to the plaintiff and the plaintiff's horse and wagon, from the horse being frightened through the alleged negligence of the defendant's servants operating a car on Washington Street in Canton. Writ dated March 26, 1900.

At the trial in the Superior Court *Fessenden,* J. ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*J. McGeough,* for the plaintiff.

*T. E. Grover,* for the defendant.

BRALEY, J. Though the evidence was conflicting, it appeared from the plaintiff's statement that while he was driving along Washington Street, a public way in the town of Canton, it became necessary for him, in order to pass safely another traveller by carriage, to turn from the middle of the street to

the right, and drive directly on to the tracks of the defendant's road located on the easterly side of the way, and as he continued his course and came to a turn in the road, he was warned by the vibration of the trolley wire that a car was approaching, and immediately turned to the left in order to leave the track; but the wheels of his wagon clung to the flange of the rails and slipped for a short distance; and he then saw for the first time that a car was approaching and "came round the bend just as I was swinging off the track; I should think that the car was about one hundred and fifty or two hundred feet * away from me when I first seen it; they came round the bend and were right on top of me almost in a moment.  He rang his bell, and next thing I knew my horse got frightened; I couldn't control her. . . . I could not say how fast the car was going; it came on me so sudden. . . . The man at the brakes made a sort of an attempt to stop, — I don't know whether he got bewildered or what happened, but he slid I should say fifty or seventy-five feet, beyond where the accident happened before he came to a full stop." After the gong rang and the car approached nearer, the horse, which previously had been under control, became frightened, then unmanageable, and finally plunged in front of, and just escaped contact with, the car, ran across the street, and came into collision with a telephone pole, the plaintiff was thrown to the ground and hurt, his horse injured, while his wagon was demolished.

If the plaintiff as a traveller was found to have obeyed the law of the road in turning to his right to permit another conveyance to pass, then he was in the lawful use of that portion of the street occupied by the tracks of the defendant, and while neither of the parties had an exclusive use of the highway, each was required to observe a due regard for the rights of the other, and their respective privileges arising from such a concurrent use have been so fully defined by our decisions that no further discussion is now required in the consideration of this case.  *Commonwealth* v. *Temple,* 14 Gray, 69.   *Galbraith* v. *West End Street Railway,* 165 Mass. 572.   *White* v. *Worcester Consolidated Street*

---

* On cross-examination the plaintiff testified that the car was three hundred feet away, and later said that it was not so far away as that.

*Railway*, 167 Mass. 43. *Scannell* v. *Boston Elevated Railway*, 176 Mass. 170.

As the defendant does not claim that the plaintiff's conduct was careless, but confines its argument to the single proposition that the testimony wholly fails to disclose any negligence on its part, the question presented for decision is whether there was any evidence which required a submission of this issue to the jury.

In the management of the car the defendant was required to take reasonable precautions not only to avoid a collision, but also if possible to prevent its too sudden approach, as this naturally would tend to further excite a horse clearly seen to be restive and that soon escaped from the control of the plaintiff.

But an examination of the evidence discloses that the car was running at a speed of not over " five or six miles an hour " when it came around the bend in the road, and at a point from two hundred and fifty to three hundred feet distant from the plaintiff, and though the gong was sounded, the plaintiff did. not testify that its ringing caused the fright of his horse, while the testimony of the defendant's witnesses that the brake was applied promptly, remained uncontradicted.

If it was the duty of the defendant's servants to anticipate the fact shown by common experience that travellers by carriage also might be using the highway at the same time, and the speed of the car and the skill with which it should be managed and controlled depended upon a proper recognition of these conditions, yet the car does not appear to have been running at an undue rate of speed, or to have been beyond the immediate control of the motorman ; for on the application of the brake its speed slackened and a collision was avoided, though the point at which it was stopped was in dispute.

It was said in *Ellis* v. *Lynn & Boston Railroad*, 160 Mass. 341, 350, which is among the cases relied on by the plaintiff, that: " The motorman is supposed to know that his car is likely to frighten horses that are unaccustomed to the sight of such vehicles, while most horses are easily taught after a time to pass it without fear. It is his duty, if he sees a horse in the street before him that is greatly frightened at the car, so as to endanger his driver or other persons in the street, to do what he reasonably can in the management of his car to diminish the fright of the horse,

and it is also his duty in running the car to look out and see whether, by frightening horses or otherwise, he is putting in peril other persons lawfully using the street on foot or with teams."   See also *Benjamin* v. *Holyoke Street Railway*, 160 Mass. 3 ; *Thompson* v. *Holyoke Street Railway*, 170 Mass. 365 ; *Henderson* v. *Greenfield & Turner's Falls Street Railway*, 172 Mass. 542.

If this rule is applied to the conduct of the defendant's servants in the case at bar, it is plain that, upon the discovery of the situation of the plaintiff, and the excitement of his horse, the motive power was turned off, the brake applied, and every proper effort made by them not only to prevent a collision, but to avoid further frightening the horse.

As no negligence on the part of the defendant was shown, a verdict was ordered rightly in its favor.

*Exceptions overruled.*