STANISLAS DUCHARME *vs.* HOLYOKE STREET RAILWAY
COMPANY.

Hampden.    September 28, 1909. — October 20, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Practice, Civil,* Exceptions, Conduct of trial, Judge's charge. *Evidence,* Competency, Remoteness. *Damages. Witness,* Impeachment, Credibility. *Negligence. Street Railway.*

In an action for the loss of the plaintiff's left eye alleged to have been caused by the negligence of the defendant, the presiding judge allowed the defendant to introduce evidence that two years before the time of the alleged injury the plaintiff had been struck on the left cheek bone and his left eye had been injured. The plaintiff objected to the admission of this evidence, and, after it was admitted, asked to have it excluded. The judge refused to exclude it at that time, but said that he would exclude it afterwards unless other evidence was put in. It did not appear that any other evidence on the subject was put in, but the judge's attention was not called to the matter and he made no further ruling in regard to it. The plaintiff had not excepted to the admission of the

evidence. *Held*, that, even if the plaintiff had excepted properly to the admission of the evidence or to the refusal to strike it out, such an exception could not have been sustained, because it could not be said that the evidence, at the time of its admission, was not competent on the question of damages as one step toward showing the condition of the plaintiff's eye just before the accident, and because the judge's attention afterwards was not called to the fact that there was no further evidence on the subject to show that the previous injury had produced any continuing effect upon the plaintiff's eye.

An error of a presiding judge in the admission of evidence confined by his instructions to the question of damages is made immaterial by a general verdict for the defendant.

In an action for personal injuries alleged to have been caused by the negligence of the defendant, it is competent for the defendant to show, upon the question of damages, that the injuries of the plaintiff were due to another cause, which occurred after the accident in question, and, if the evidence introduced for this purpose might be prejudicial to the plaintiff on other issues in the case, if applied to them, this does not make the evidence inadmissible, and the plaintiff has no ground for complaining of its admission if the presiding judge instructs the jury that they must consider this evidence only upon the question of damages.

In an action for the loss of the plaintiff's left eye alleged to have been caused by the negligence of the defendant, where the defendant, upon the question of damages, has shown that in the year after the accident the plaintiff had suffered certain injuries which affected the left side of his head and his left eye, a physician, testifying as an expert, may be asked by the defendant what effect in his opinion the later injury would have upon the plaintiff's vision, assuming that the previous accident had produced a loss of vision in his left eye and "that as time went on he found an inability of the adaptation of the right eye and of accommodation of the vision of the right eye to space and distance," although the witness saw the plaintiff only twice and noticed no trouble as to discoloration or swelling of the other eye, these facts affecting only the weight to be given to the testimony.

In an action against a street railway company for personal injuries alleged to have been caused by the negligence of the defendant's servants in operating one of its cars which came in collision with the horse and sleigh of the plaintiff, where the motorman of the defendant who was operating the car at the time of the accident has testified as a witness, the plaintiff cannot impeach his credibility by putting in evidence a letter received by the plaintiff, not shown to have been written with the knowledge of the motorman, in which the writer says that he is a particular friend of the motorman and that if the plaintiff deems it worth his while the writer thinks he can arrange to have the motorman as a witness on the plaintiff's side.

In an action against a street railway company for personal injuries alleged to have been caused by the negligence of the defendant's servants in operating one of its cars which came in collision with the horse and sleigh of the plaintiff, it appeared that the accident occurred in December at twenty minutes past seven o'clock in the evening, which was about three hours after sunset; also that the moon had risen more than four hours before the happening of the accident, and was full two days later. The evidence of the plaintiff tended to show that the night was dark and cloudy. The evidence of the defendant tended to show that it was a bright night. The plaintiff offered the evidence of two witnesses on this question. One of them testified that he had observed and recorded the state of the weather and had tested the amount of light and cloudiness at a

point of observation six or seven miles distant from the place of the accident at the hours of seven in the morning, two in the afternoon and nine at night of the day in question. The plaintiff offered to show by him and his records that on this night at nine o'clock there was a state of " total cloudiness." The other witness testified that he had taken and recorded observations, at a point some miles distant from the place of the accident, and the plaintiff offered to show by him that on the day of the accident the weather was cloudy at the hours of seven in the morning, at noon and at six o'clock in the evening. The presiding judge excluded the evidence thus offered. *Held*, that it was for the judge in the exercise of his discretion to determine as a fact whether this testimony was too remote properly to assist the jury in settling the issue upon which it was offered, and, although it might have been a wiser exercise of that discretion to have admitted the testimony of the two witnesses to be considered together and to have left it to the jury to determine the weight to be given to their testimony, under proper instructions, it could not be said as matter of law that the exclusion was erroneous.

Upon the issue of the weather conditions under which a collision occurred between an electric street car and a horse and sleigh, the question, whether evidence of the depth of snow observed at a point some miles distant from the place of the accident on the day of the accident at a different hour should be admitted for the consideration of the jury, is to be determined by the presiding judge in the exercise of his discretion.

A motorman, who is operating an electric street car upon a country road on a track outside the regular roadway in the evening, is not bound to anticipate that a traveller driving on the road ahead of him will needlessly or recklessly drive upon or so near to the track as to involve danger in the ordinary running of the car.

If a presiding judge, intending to give an instruction as requested, fails to state it with technical accuracy, but tells the counsel who made the request that he has given the instruction requested, and the counsel makes no objection, the counsel must be taken to have acquiesced in the judge's statement, and has no right to complain afterwards of inaccuracy in the form of the instruction.

If a man, who is driving in the evening with a horse and sleigh on a country road, at the side of which is the track of a street railway outside the roadway wrought and used for general travel, unnecessarily and without the exercise of due care drives out of the macadamized part of the road and in close proximity to the track, where his sleigh and horse are struck by a car approaching from behind, he cannot recover for the injuries thus caused by his negligence.

A request at a trial for an instruction to the jury, which is correct as a general proposition of law, properly may be refused by the presiding judge if the effect of giving the instruction requested would be to suggest an argument for the party requesting it.

Although the maxim "*falsus in uno falsus in omnibus*" is not a rule of law in this Commonwealth, a jury may apply it so as to disregard entirely the testimony of a particular witness if they are convinced that they ought to do so, and it is not error for a presiding judge to tell them this.

At the trial of an action for personal injuries alleged to have been caused by the negligence of the defendant, the presiding judge in his charge to the jury, after stating briefly the plaintiff's account of the way in which he received the alleged injuries, said, " That is the way I understand his testimony, if I am right about it. Does that strike you as credible or incredible? It is entirely for you to say, and I express no opinion whatever, and you are to gather absolutely nothing as to what my opinion is." The plaintiff did not ask the judge to cor-

rect or change his statement of the plaintiff's description of the accident, but excepted to this portion of the charge as being a charge with respect to matters of fact contrary to the provision of R. L. c. 173, § 80. *Held*, that there was no charge by the judge with respect to matters of fact within the meaning of the statute.

TORT for the total loss of sight of the plaintiff's left eye, alleged to have been caused by the collision of a car of the defendant with the plaintiff's horse and sleigh, whereby the plaintiff's horse became frightened and ran away, throwing the plaintiff against a pole set in the highway, at about twenty minutes after seven o'clock in the evening of December 28, 1906, on Chicopee Street in Chicopee. Writ dated February 11, 1907.

In the Superior Court the case was tried before *King*, J. The jury took a view of the premises. At the trial it appeared that on the evening in question the plaintiff was returning from Springfield with a friend called Boulais. He was driving a single horse attached to an ordinary cutter, and was seated on the right hand side of the sleigh, Boulais being seated beside him. The plaintiff testified that as he was travelling north on Chicopee Street he met the car, which afterwards struck his horse and sleigh, proceeding toward the south at a point less than a mile away from the Chicopee end of the line; that he knew this car would go down Chicopee Street to the end of the line and that the trolley would be changed and the car would start back toward Holyoke; that he knew that 7.15 in the evening was the leaving time for this car at the end of the line; that he was looking out for this car; that he knew that it would be back, and that he knew that when he got a little farther it would overtake him; that he was driving close to the track at a speed of about four miles an hour; that he was overtaken by the car which passed the back of the sleigh without coming in contact with it; that the car came in contact with the right hand side of the sleigh at a point near the step on that side; that it then came in contact with the horse, who became frightened and ran across the street; and that the left side of the plaintiff's head came in contact with a pole and he received the injuries complained of. The moon was near its full on the night in question, and the defendant's evidence tended to show that the night was a clear, moonlight night; the plaintiff's evidence tended to show that the night was dark and cloudy. There was evidence that as the plain-

tiff was driving along Chicopee Street before and at the time of the accident, he and his companion Boulais were engaged in conversation in regard to a proposed contract. The defendant introduced evidence tending to show that when the car approached the sleigh the reins were lying on the dasher of the sleigh and that, as the car was passing the sleigh, the plaintiff became confused and pulled the wrong rein and guided the horse into the side of the car and that there was no contact between the car and the sleigh. The defendant also introduced evidence tending to show that both the plaintiff and his companion Boulais were intoxicated; the plaintiff introduced evidence that they both were sober.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

The evidence and the rulings of the judge relating to the exceptions which were argued by the plaintiff are stated in part in the opinion. The parts of the evidence and the rulings not stated in the opinion, which are necessary to understand the questions raised, were as follows:

The testimony of Dr. Gates, called as a witness by the defendant, which was held not to have been made incompetent by the facts that the witness had seen the plaintiff only twice and had noticed no trouble as to discoloration or swelling of the other eye, was as follows: He was asked this question, " Now, Doctor, assume that in December, 1906, this claimant, Mr. Ducharme, had received an injury to the optic nerve, so that it produced a loss of vision in the left eye, and assume that as time went on he found an inability of the adaptation of the right eye and of accommodation of the vision of the right eye to space and distance, what effect in your opinion would this accident of October, 1907, have ? " This question was objected to by the plaintiff, and was admitted by the judge, and the plaintiff excepted. The witness answered, " It would exaggerate that condition of inability for establishing distances and focusing."

The letter of one Collyer to the plaintiff, referred to in the opinion as excluded rightly by the judge, was dated at New York on March 12, 1908, was addressed to the plaintiff at Willimansett, Massachusetts, and was signed by Collyer, with his New York address beneath his signature. It was as follows:

" I understand that your case against the Holyoke Street Railway is due to come up soon, and as I am a particular friend of the motorman most concerned in this case I have been able to get a thorough understanding of it all. Should you deem it worth your while to have him witness on your side, I think that I can arrange it with him to your satisfaction. Hoping that you consider this matter of a great importance to you, I await your earliest possible reply."

The plaintiff's first, third, fourth and fifth requests for instructions, referred to in the opinion, the first as intended to be given and the others as given in substance or as correctly modified, were as follows :

" 1. The record of the plaintiff's conviction in the Chicopee Police Court has no bearing upon any issue in the case except that it may be used to affect the degree of credibility to be given him. The record is admissible solely for this purpose, and to use it for any other purpose or to make use of it upon any other issue is improper."

" 3. The jury are not to consider evidence admitted for one purpose only, for any other purpose, and if they are satisfied that the injury to the plaintiff's eye and the blindness resulted solely from the injury of December 28, 1906, then the evidence of what occurred on the Springfield Street Railway in October, 1906, and the evidence as to what occurred in Gervais' saloon, should be entirely excluded from their consideration.

" 4. The evidence of what occurred in Gervais' saloon is admissible solely on the question of the injury to the plaintiff's eye ; it has no other effect, and to give it any other effect is clearly erroneous ; and if the evidence shows that all the injury to the eye resulted from the injury of December 28, 1906, then the evidence of what occurred in the saloon must be entirely excluded.

" 5. The evidence of what occurred on the Springfield Street Railway was admitted solely on the question of the injury to the plaintiff's eye ; it has no other effect, and to give it any other effect is clearly erroneous ; and if the evidence shows that all the injury to his eye resulted from the injury of December 28, 1906, then the evidence of what occurred on the Springfield Street Railway must be entirely excluded."

The eighteenth request, referred to in the opinion as correct as a general proposition but here properly refused, was as follows:

"18. The fact that the defendant could not run down the plaintiff from behind under ordinary circumstances without negligence or wilful wrong is a circumstance the plaintiff had a right to act upon, and to assume that the defendant would exercise proper care."

Other requests referred to in the opinion as having been properly dealt with in the charge as to their subject matter, were as follows:

"20. The plaintiff's team and the defendant's car were both rightfully in the highway, and it was the duty of the defendant's motorman to remember and recognize the use of the street by teamsters, and to avoid running them down if they happened to be wholly or partially between the rails, or so near the track that there might be danger of contact, and the plaintiff had a right to assume that at least this degree of care would be exercised by the motorman.

"21. It was not negligent or unlawful for the plaintiff to drive upon or near the tracks of the defendant."

"23. Upon the evidence the jury would be warranted in finding that the plaintiff had reason to believe that he could be seen by the motorman at a distance of several hundred feet; that it was reasonable that he should expect the gong to be sounded; and that the defendant's motorman would have his car under such control as not to permit it to collide or come in contact with the plaintiff's sleigh and horse.

"24. It is the duty of a motorman to anticipate the fact shown by common experience that travellers by team also may be using the highway at the same time, and the speed of the car and the skill with which it should be managed and controlled depend upon a proper recognition of these conditions."

The portion of the judge's charge in regard to the right of the jury to disbelieve all the testimony of a witness who has testified falsely, referred to in the opinion, was as follows: "Another thing, and I am nearly done, gentlemen. There is a principle which you may apply if you think you should. If one wilfully tells before you that which strikes you as not true,

about which they know, you have the right to say, False in one, false in all, meaning you will put no reliance upon it. You may apply that to a party or to any witness, but don't apply it unless you are satisfied that what they say is not true."

The portion of the charge about the testimony of the plaintiff and Boulais in regard to the manner in which the plaintiff was injured, referred to in the opinion as not being a charge upon the facts within the meaning of R. L. c. 173, § 80, was as follows: "Now, another incident which I had overlooked, about which nothing has been said by either counsel, so far as I recollect. You may think it important. The plaintiff says that when his horse was struck it turned to the left and went over toward the pole, then suddenly turned, and he was hurled against the pole, and fell back into his sleigh and went on,—and Mr. Boulais so testifies,—and that is the way he got the injury. That is the way I understand his testimony, if I am right about it. Does that strike you as credible or incredible? It is entirely for you to say, and I express no opinion whatever, and you are to gather absolutely nothing as to what my opinion is."

*J. B. Carroll,* (*T. D. O'Brien* with him,) for the plaintiff.
*W. Hamilton,* (*W. H. Brooks* with him,) for the defendant.

SHELDON, J.    The collision in which the plaintiff was injured and lost the sight of his left eye occurred on December 28, 1906. The defendant was allowed to introduce evidence that in 1904, in a saloon, the plaintiff had been struck on the left cheek bone and his left eye injured. This evidence was received under his objection. He then asked to have it excluded, and the judge refused to exclude it then, but said that he would strike it out afterwards unless other evidence was put in. It does not appear that other evidence was put in on this matter; but the judge's attention was not again called to it, and he made no further ruling on the subject. The plaintiff had not excepted to its admission. This evidence might be material upon the question of damages, to show what the condition of the plaintiff's left eye was just before the accident. It cannot be said that the evidence was not competent, as one step toward showing that condition; the judge's attention was not called to the fact that there was no further evidence to show that the previous injury had

produced any continuing effect upon the plaintiff's eye; and, if we assume that the plaintiff has now the right to contend that the evidence ought not to have been admitted, or that the testimony should have been stricken out upon his request, we are yet of opinion that he shows no right of exception.

Testimony of the injuries suffered by the plaintiff in 1907 and of their effect upon the left side of his head and his left eye was admitted solely upon the question of damages. It was competent for the defendant to show, if it could, that his injuries were caused in whole or in part by another cause after the accident in question, and so that the defendant could not be held for the full amount of damages claimed. And if there had been any error in the admission of evidence upon the question of damages, it was made immaterial by the general verdict for the defendant. *Carroll* v. *Boston Elevated Railway*, 200 Mass. 527, 533. *Oak Island Hotel Co.* v. *Oak Island Grove Co.* 165 Mass. 260. It may be true, as has been urged in argument, that this testimony, if it had been admitted generally, would have been unduly prejudicial to the plaintiff upon the issue of his due care; but here the jury were expressly told that the evidence was received only for the one purpose, which has been stated, and it must now be presumed that they followed the instructions of the judge. *Sullivan* v. *Lowell & Dracut Street Railway*, 162 Mass. 536.

The testimony of Dr. Gates as to the effect of the subsequent injury upon the plaintiff's vision if he already had lost the sight of his left eye was not made incompetent by the facts that the witness had seen the plaintiff only twice and had noticed no trouble as to discoloration or swelling of the other eye. This went only to the weight of his testimony. We cannot say that it is not a matter of expert knowledge whether or how far the vision of one eye or its power of adjustment or accommodation to distances, which had caused trouble after the loss of the other eye, might be affected by another injury in or close to the same place.

The exclusion of the letter written by Collyer to the plaintiff was correct. The motorman Hill had denied any connection with the letter or knowledge of it, and there was no evidence to contradict him. It was as likely that Collyer was making a barefaced attempt to obtain some advantage for himself by trading upon a pretended influence over Hill as that he wrote

the letter in collusion with Hill.   It was only by conjecture that any inference could be drawn from this letter against Hill's honesty and credibility as a witness.   The reasoning of the opinion in *Commonwealth* v. *Min Sing*, 202 Mass. 121, supports this view.   Inferences from the mere declarations of a third party are no more competent than the declarations themselves. *Farrell* v. *Weitz*, 160 Mass. 288.

The rejection of the testimony of Erck and of Ferry as to their observations of the weather on the day of the accident presents a more difficult question.   But we are of opinion that it was for the judge in the exercise of his discretion to determine whether this testimony was too remote to assist properly the jury in settling the issue upon which it was offered.   *Sargent* v. *Merrimac*, 196 Mass. 171, 174, and cases cited.   It perhaps would have been a wiser exercise of that discretion to have admitted the testimony of these two witnesses to be considered together, and to have left it to the jury to determine the weight to be given to it under proper instructions; but we cannot say as matter of law that its exclusion was erroneous.

The accident occurred at twenty minutes after seven o'clock, about three hours after sunset, on a winter's night.   The evidence for the plaintiff tended to show that it was a dark and cloudy night; according to the defendant's evidence, it was a bright night.   This was a material question upon the main issues in the case.   The moon had risen more than four hours before the happening of the accident, and was full two days afterwards.

Erck was a sergeant in the United States army, stationed at the armory at Springfield, and was charged with the duty of taking and recording observations there.   He testified that he had observed and recorded the state of the weather and had tested the amount of light and cloudiness at the armory, six or seven miles distant from the place of the accident, at the hours of seven in the morning, two in the afternoon, and nine at night of the day in question.   The plaintiff offered to show, by him and by his records, that on this night at nine o'clock, at the Springfield armory, there was a state of "total cloudiness," that is, that neither sun nor moon would be visible; and this evidence was excluded.   Erck also testified that the weather as to

rain or snow at the armory might differ from that at places six or seven miles away.

Ferry testified that he had taken and recorded observations at his house in Holyoke. The plaintiff offered to show by him that, on the day of the accident, the weather was cloudy at the hours of seven in the morning, noon, and six o'clock in the evening; and this evidence was excluded. The distance from Ferry's house to the place of the accident was not directly testified to, but some circumstances in evidence indicated that these places were some miles apart.

As neither the testimony of these witnesses nor Erck's records were themselves incompetent, the question is whether the evidence offered, at least as to the evening of the accident, was of such a character and presented such variations of time, place or other circumstances as to make its admission a subject for the exercise of judicial discretion rather than one of legal right.

It is matter of common knowledge that weather conditions are variable both in place and time; and it has been said that this is especially true of the climate of New England. Rain or snow may be falling in any one part of a given district while in another part not many miles away the weather may be pleasant. The light of the moon may be obscured by clouds in one place, while it is shining brightly in another place. And sunshine or moonlight may quickly and repeatedly alternate with thick clouds and rain or snow. In the afternoon of the day on which this case was argued at Springfield, there were such alternations. And on a moonlight night, when there are clouds in the sky, it often happens that periods of bright moonlight and of complete obscuration by heavy clouds with resultant darkness succeed each other at short and frequent intervals. The conditions of light at one time and place under such circumstances might not enable a jury to draw a trustworthy inference that the conditions were the same an hour or two earlier or later at a place some miles distant from that testified to. It is a question of fact, to be determined by the presiding judge, whether such testimony is reasonably adapted to aid the jury in passing upon the issue before them; and this court will not attempt to revise his decision unless upon the undisputed facts it was plainly and clearly wrong. This is the unbroken doctrine of our decisions.

It is enough to refer to some of the more recent cases.  *Commonwealth* v. *Tucker*, 189 Mass. 457, 476, *et seq.*   *Dow* v. *Bulfinch*, 192 Mass. 281.   *Yore* v. *Newton*, 194 Mass. 250.   *Baker* v. *Harrington*, 196 Mass. 339, 341.   *Henry J. Perkins Co.* v. *American Express Co.* 199 Mass. 561.   *Field* v. *Gowdy*, 199 Mass. 568, 574.   *Mountford* v. *Cunard Steamship Co.* 202 Mass. 345, 351. The rule was stated by the present Chief Justice, with full citations, in *Shea* v. *Glendale Elastic Fabrics Co.* 162 Mass. 463, 465.

The testimony of Ferry as to the depth of snow observed by him comes under the same principle.  *Brooks* v. *Acton*, 117 Mass. 204.  We cannot sustain the exceptions to the ruling excluding this evidence.

The judge instructed the jury against the exception of the plaintiff that there was no sufficient evidence that the defendant was running its car at a high rate of speed, and the plaintiff could not recover upon that ground, that is, — as we think appears from the whole of the charge, — that he could not base a recovery upon this as an independent ground of liability.   The instructions taken together evidently left it to the jury to consider the speed of the car in connection with the other circumstances proved upon the question of the defendant's due care or negligence.  *Driscoll* v. *West End Street Railway*, 159 Mass. 142. So construed, the ruling was not wrong.  While there was much evidence that the car was moving slowly, and no direct testimony that its rate of speed was more than six or seven miles an hour before the collision, and much less than that when the accident occurred, yet there was evidence of circumstances which might have warranted a finding that the car was moving more rapidly. The time that elapsed after the parties saw each other, the rate of speed of the plaintiff's horse, the degree of suddenness of the collision, the violence of the impact, the distance that the car went before it was stopped, were some of these circumstances. But this car was going along a country road, outside the regular roadway, in a strip separated therefrom; and until the motorman saw that there was some risk of a collision he was not bound to anticipate that the plaintiff would drive needlessly or recklessly upon or so near to the track as to involve actual danger in the ordinary running of the car.   *O'Brien* v. *Blue Hill Street Railway*, 186 Mass. 446.   There was no evidence that the

car was running at more than its regular and ordinarily proper rate of speed. *Hunt* v. *Boston Elevated Railway*, 201 Mass. 182, 184, 185. *Foley* v. *Boston & Maine Railroad*, 193 Mass. 332, 335. In *Tashjian* v. *Worcester Consolidated Street Railway*, 177 Mass. 75, *Vincent* v. *Norton & Taunton Street Railway*, 180 Mass. 104, *Kerr* v. *Boston Elevated Railway*, 188 Mass. 434, and many similar cases, the tracks were laid in that part of the highway which was wrought and used for general travel. Under the circumstances and in the connection in which this statement was made by the judge, the plaintiff shows no ground of exception to it.

The plaintiff's first request for instructions was manifestly intended to be given. While the judge's language as to this point was not well chosen and was technically incorrect, yet it does not seem to have been likely to mislead the jury. Moreover, he told the plaintiff's counsel that this had been charged explicitly. As the counsel then made no further complaint, he must now be taken to have acquiesced in the judge's statement, and has not the right to criticise nicely the language of the judge.

The third, fourth and fifth requests were given in substance. So far as they were modified by leaving it to the jury to say how far the plaintiff's injuries at other times affected him or delayed or impaired his recovery, this was correct.

The judge ruled that "if the plaintiff at the time of the accident unnecessarily and not in the exercise of due care drove out of [the] road or the macadamized part of it and in close proximity to [the] defendant's track, and this caused or contributed to cause his injury, then he is not entitled to recover." This was right. It required the jury to find not only that his act was unnecessary, but that he was not in the exercise of due care in doing it.

The eighteenth request was correct as a general proposition of law. *Vincent* v. *Norton & Taunton Street Railway*, 180 Mass. 104. But the judge was not required to give it. He was not to suggest an argument for the plaintiff. The jury were to pass upon the particular circumstances of the case as these were proved to them. *Blackburn* v. *Boston & Northern Street Railway*, 201 Mass. 186.

The jury were properly instructed as to the subject matter of

the twentieth, twenty-third and twenty-fourth requests. The twenty-first request was given in other words.

What the judge said about the right to discredit all the testimony of a witness who had wilfully testified falsely was not erroneous. It is true that we do not adopt the maxim *falsus in uno falsus in omnibus,* as a rule of law. But it is also true that a jury may apply it so as to disregard entirely the testimony of any particular witness if they áre convinced that they ought so to do. *Commonwealth* v. *Wood,* 11 Gray, 85, 93. *Commonwealth* v. *Billings,* 97 Mass. 405. *Hill* v. *West End Street Railway,* 158 Mass. 458, 460.

What the judge said in reference to the testimony of the plaintiff and Boulais as to the manner in which the plaintiff was injured in striking the pole was not a charge upon the facts within the meaning of R. L. c. 173, § 80. If he misapprehended the plaintiff's contention or did not remember correctly the testimony, the mistake might properly have been called to his attention. But this was not done.

What we have said covers all the exceptions that have been argued. None of them can be sustained.

*Exceptions overruled.*