J. SIDNEY FOSTER *vs.* THOMAS P. CURTIS.

Suffolk.    March 15, 1912. — November 25, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & DECOURCY, JJ.

*Negligence,* In use of highway, Violation of statute.   *Law of the Road.*

The provision of R. L. c. 54, § 2, that "the driver of a carriage or other vehicle passing a carriage or other vehicle travelling in the same direction shall drive to the left of the middle of the travelled part of a bridge or way," applies to the driver of an automobile who is attempting to pass a street railway car travelling in the same direction. RUGG, C. J., HAMMOND, & LORING, JJ., dissenting.

In an action for personal injuries sustained, when the plaintiff had alighted from the right hand side of an open electric car of a street railway, from being struck by an automobile driven by the defendant, if it appears that the street railway car, which had come to a stop, was proceeding in the same direction in which the defendant was travelling and that the defendant attempted to pass to the right of it, the defendant's violation of R. L. c. 54, § 2, is evidence of negligence on his part. RUGG, C. J., HAMMOND, & LORING, JJ., dissenting.

TORT for personal injuries sustained by the plaintiff on September 19, 1906, from being struck by an automobile driven by the defendant on Broadway in the town of Revere.   Writ dated January 25, 1908.

The answer was a general denial.

In the Superior Court the case was tried before *Harris,* J. The plaintiff testified that he was struck by the defendant's

automobile immediately after he had alighted from an open electric street railway car, that at the point where the accident happened Broadway was forty feet wide with double street railway tracks, over which cars were passing frequently, and that the distance on each side of the street between the outer rail of the street railway tracks and the curbstone was about twelve feet. The defendant testified that before the accident he had been following for several blocks the street railway car from which the plaintiff alighted, going at the same rate of speed as the car, that as the car began to go more slowly in approaching the crossing the defendant did the same until the car came within about fifty feet of the crossing, when the defendant turned to the right and went out to the curbstone, so as to leave a space between the street railway car and his automobile, that the street railway car then stopped and the defendant was about to pass it on the right, when the plaintiff stepped off the car and was struck by the mud guard and the front wheel of the defendant's automobile.

At the close of the evidence the plaintiff asked the judge to give to the jury, among other instructions, the following:

"The fact that the defendant was disobeying the law of the road will justify the jury in finding for the plaintiff, if the plaintiff was in the exercise of due care."

The judge refused to give this instruction, and with reference to the subject matter of the request instructed the jury as follows:

"Now, in regard to the side of the road that the defendant was travelling upon. While it is the general 'law of the road' as we call it, that one vehicle coming up behind another and trying to pass it shall pass it on the left, I do not understand that the rule applies to electric street cars in the highway, where there are two sets of tracks. The reason that I make that distinction as I understand it (although I am not aware that the case has been squarely decided in this Commonwealth), is this. If I am driving with a horse and carriage upon a road and I come up behind another man driving a horse and carriage and I want to go by him, I go by on his left; because, if he, travelling in that direction, meets a team coming in the other direction and has to turn out, by the 'law of the road' and by natural conduct he turns to the right. So that if we try to go by him on his right from behind and he were at the same time forced to turn out for something

coming toward him, he would turn right into us. That is to say, we would not leave him free to turn; but in the case of electric cars, which run upon rails and cannot turn out, but can only stop, go forward or backward, it seems plain enough to me, and for the purpose of this case I instruct you as a matter of law, that the ordinary rule of the road for vehicles which have the full liberty of the width of the road does not apply. They cannot turn out. But on the other hand, the defendant, if he had undertaken to go to the left of the car preceding him, would have had necessarily to turn onto the track where the cars that were coming toward him might come into him head-on. So that, so far as his being on the right hand side of the road itself goes, I should instruct you — I do instruct you — that that was not a violation of the 'law of the road,' and was not of itself negligence."

. The plaintiff excepted to. the refusal to give the instruction requested and to the instruction given.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions, which, after the resignation of *Harris,* J., were allowed by *Jenney,* J.

The case was argued at the bar in March, 1912, before *Rugg,* C. J., *Braley, Sheldon, & DeCourcy,* JJ., and afterwards was submitted on briefs to all the justices.

*S. R. Cutler,* for the plaintiff.

*W. H. Hitchcock,* for the defendant.

BRALEY, J. The scene of the accident was a public way in the centre of which the double tracks of a street railway were so located as to leave an equal space between the outer rails and the opposite curb. The plaintiff had just alighted from the right hand side of an open electric car, and while in the act of stepping forward to cross the street to the curb in front, the defendant's automobile, which had been following in the rear, turned to the right to pass the car and in passing struck and injured him. If the defendant had gone by on the left the plaintiff would not have been injured, and in submitting to the jury the question of the defendant's negligence the presiding judge was requested by the plaintiff to rule that "the fact that the defendant was disobeying the law of the road will justify the jury in finding for the plaintiff, if the plaintiff was in the exercise of due care." *Damon* v. *Scituate,* 119 Mass. 66, 68. *Finnegan* v. *Winslow*

*Skate Manuf. Co.* 189 Mass. 580, 582. The verdict having been for the defendant, the exceptions are to the refusal to give this request, and to the instructions that the defendant's conduct "was not a violation of the 'law of the road,' and was not of itself negligence." A majority of the court are of opinion that the request was appropriate, and that the instructions were erroneous.

By R. L. c. 54, § 2, "The driver of a carriage or other vehicle passing a carriage or other vehicle travelling in the same direction shall drive to the left of the middle of the travelled part of a bridge or way; and if it is of sufficient width for the two vehicles to pass, the driver of the leading one shall not wilfully obstruct the other." It has been decided that in the concurrent use of our public ways an automobile is to be classed as a vehicle. *Hennessey v. Taylor,* 189 Mass. 583. *Trombley v. Stevens-Duryea Co.* 206 Mass. 516. *Lynch v. Fisk Rubber Co.* 209 Mass. 16. *Bourne v. Whitman,* 209 Mass. 155. But the defendant contends that an electric street car should not thus be defined, and, if it is not a vehicle as an object of travel, his liability at common law depended upon whether he acted with reasonable prudence in passing upon the right instead of on the left, and the jury correctly settled this issue in his favor. *Smith v. Conway,* 121 Mass. 216, 219.

It was assumed in *Clinton v. Revere,* 195 Mass. 151, 154, where the plaintiff riding a bicycle and following an electric car and furniture wagon moving abreast, turned to the right to pass between the car and the wagon and was injured by a defect in the way, that his failure "to observe the requirements of R. L. c. 54, § 2, by turning and passing by to the left of the car," was not decisive, as the jury were to determine whether he acted with ordinary care. And in *McGourty v. DeMarco,* 200 Mass. 57, 60, where the plaintiff in alighting from a street car was run into from behind by a team owned by the defendant and driven by his son, it was said: "If the defendant was, as his counsel assumed in their brief, and as the jury certainly might find, attempting to pass the car from behind on his right hand in violation of R. L. c. 54, § 2, the jury might find that this, under the circumstances, was negligence on the driver's part such as McGourty was not called upon to anticipate." See also *Keeney v. Springfield Street Railway,* 210 Mass. 44, 48.

A further examination of the statute in the light of our de-

cisions confirms this construction. The relative rights of the general public to use the highway through which a street railway runs were defined some fifty years ago by Chief Justice Shaw in *Commonwealth* v. *Temple,* 14 Gray, 69, 75, as being equal "in the absence of any special regulation by law." In construing the St. of 1856, c. 302, § 5, which made the wilful and malicious obstruction of the use of the track of the street railway of the company incorporated by the statute a criminal offense, he further says, in considering the exceptions of the defendant who had been convicted of a violation of the act by obstructing a horse car when travelling over the street with a heavily loaded team: "The defendant's team was moving at the usual rate for teams of that class, but at a less rate of speed than the cars were in the habit of moving. There was room outside the track for either vehicle to pass the other. When the car came up, the conductor asked the defendant if he would remove his team from the track; he did not, but continued upon it, at the same rate of speed, several hundred feet, and then turned off. Several things are here to be observed. The cars could only pass on one precise line. The wagon could deviate to the right or to the left, within the limits of the travelled part of the road. The public, by the grant of the franchise, had granted the right to move on that precise line, and had given to all passengers the right to be carried on that line at the usual rate of speed at which passengers are carried by horses, subject only to occasional necessary impediments. The cars cannot so move, and the passengers cannot be so carried, whilst the wagon moves on the track. No impediment is shown to prevent the wagon from turning out. The wagon therefore was for the time being an unnecessary obstruction of the public travel, and therefore unlawful." While the motive power has been changed, no departure has been made from the principles of this decision, which have been affirmed whenever in the concurrent use of our public ways by other travellers and street cars it has been necessary to refer to their respective rights. *Driscoll* v. *West End Street Railway,* 159 Mass. 142, 146. *Benjamin* v. *Holyoke Street Railway,* 160 Mass. 3, 5. *O'Brien* v. *Blue Hill Street Railway,* 186 Mass. 446, 447. *Kerr* v. *Boston Elevated Railway,* 188 Mass. 434, 435, 436. *Callahan* v. *Boston Elevated Railway,* 205 Mass. 422, 423.

A vehicle is a means of conveyance, and the term has not been restricted to horse drawn carriages, but includes bicycles, motor cycles, automobiles, or a street car, which since the leading case is assumed to be a vehicle having no paramount right, when being operated, to inconvenience other travellers except in so far as the Legislature has granted an exception to street railway companies. Said Holmes, J., in *White* v. *Worcester Consolidated Street Railway,* 167 Mass. 43, 44, 45, "Their tracks are in the highway, where all vehicles have a right, not merely to cross, but to travel. In view of the inability of the cars to leave their tracks, it is the duty of free vehicles not to obstruct them unnecessarily, and to turn to one side when they meet them, but subject to that and to the respective powers of the two, a car and a wagon owe reciprocal duties to use reasonable care on each side to avoid a collision. See *Galbraith* v. *West End Street Railway,* 165 Mass. 572, 580. Neither has a right to assume that the other will keep out of the way at its peril, although the electric car has a right to demand that the wagon shall not obstruct it by unreasonable delay upon the track." *O'Brien* v. *Blue Hill Street Railway,* 186 Mass. 446. *Williamson* v. *Old Colony Street Railway,* 191 Mass. 144. *Stubbs* v. *Boston & Northern Street Railway,* 193 Mass. 513. *Chaput* v. *Haverhill, Georgetown & Danvers Street Railway,* 194 Mass. 218. *Jeddrey* v. *Boston & Northern Street Railway,* 198 Mass. 232. *Lockwood* v. *Boston Elevated Railway,* 200 Mass. 537. *Eldredge* v. *Boston Elevated Railway,* 203 Mass. 582. *O'Brien* v. *Lexington & Boston Street Railway,* 205 Mass. 182. *Hatch* v. *Boston & Northern Street Railway,* 205 Mass. 410. *Carroll* v. *Boston Elevated Railway,* 205 Mass. 429, 430. *Eustis* v. *Boston Elevated Railway,* 206 Mass. 143. See also *Burton* v. *Nicholson,* [1909] 1 K. B. 397, where the court held that the driver of a carriage overtaking a tramcar must observe the law of the road.

The right of the plaintiff as a pedestrian to free and unobstructed passage also has not been abridged by modern conditions of travel. "There is no law or principle of law, or of reason, which confines foot-passengers to particular crossings. Such a restriction would be very inconvenient and annoying. The street should be kept in such condition, that foot-passengers may be able to cross, with a reasonable degree of safety, using proper care themselves, at any and all places. The necessity of this might be illustrated

very fully by reference to the common and ordinary course of business. A person, who is left by an omnibus in the middle of the street, should be able to go in safety to the sidewalk, at the nearest point, and not be compelled to make his way among the carriages in the middle of the street, till he can reach a place particularly set apart and designated for the purpose of crossing." Fletcher, J., in *Raymond* v. *Lowell*, 6 Cush. 524, 530, 531. *Slayton* v. *West End Street Railway*, 174 Mass. 55. *Eustis* v. *Boston Elevated Railway*, 206 Mass. 143, 144. *Mullen* v. *Boston Elevated Railway*, 209 Mass. 79, 80, and cases cited. *Berry* v. *Newton & Boston Street Railway*, 209 Mass. 100. The statute in question has not provided merely for the protection of travellers in vehicles; pedestrians also are entitled to rely upon the presumption that it will be observed. *Brown* v. *Thayer*, 212 Mass. 392. It should receive a construction not only in harmony with what has been declared to be the reciprocal rights and duties of travellers as defined by the authorities cited, but which will not create an exception where none is necessary to effectuate the legislative intention.

The law of the road first appears in the St. of 1820, c. 65. It was not, however, until the Gen. Sts. c. 77, that § 2 (now R. L. c. 54, § 2) was enacted, and § 5, that "the provisions of this chapter shall not apply to horse railroads" was also added. Re-enactment followed in the Pub. Sts. c. 93. In the last revision § 5 is omitted. The reason given by the commissioners is that it is superfluous, as "The history and subject matter of this chapter show that it has no application to railways, whether operated by animal power or by electricity." Commissioners' Report on Pub. Sts. c. 54, note. If the acceptance and adoption of the report without change are decisive that no express repeal of the existing law was intended, yet the Legislature must be understood to have acted under the well recognized rule that, if a statute which previously has received judicial construction is codified with the purpose of not making any substantial change in the law, it will be presumed that the intention was to adopt the construction given by this court even if there may be changes in phraseology. R. L. c. 226, § 2. *Commonwealth* v. *Lancaster Mills*, 212 Mass. 315. *Paszkowski* v. *Stony Brook Paper Co.* 210 Mass. 86. *Wright* v. *Dressel*, 140 Mass. 147, 149. *Bent* v. *Hubbardston*, 138 Mass. 99, 100. *Shelton* v. *Sears*, 187 Mass. 455.

If therefore § 5 of c. 93 of the Pub. Sts., being merely declaratory of the law of the road as defined by this court, is to be treated as still in force, how far does it affect the preceding sections of the R. L. c. 54? The first two sections are commands addressed to the drivers of carriages and other vehicles on a road or bridge. By § 1 every such driver is required to drive his vehicle seasonably "to the right of the middle of the travelled part of such bridge or way," and by § 2, if passing a vehicle going in the same direction he is required to "drive to the left of the middle of the travelled part." Where vehicles are moving in the same direction over a roadway sufficiently wide for them to pass abreast, the statute is silent as to any duty of the vehicle ahead, except that "the driver of the leading one shall not wilfully obstruct the other." The comprehensive words of these sections should be given their ordinary and natural significance. R. L. c. 8, § 4, cl. 3. Although street cars are vehicles within the meaning of the statute, their drivers are relieved from the requirement of turning to either side of the middle of the travelled part of the road. The reason is obvious. The cars need not turn, because they cannot diverge from the tracks on which they run. Persons lawfully using a public way have a right to presume that drivers of free teams and vehicles will act in conformity with these directions, and if a driver neglects to obey them, and injury results, this is a circumstance which the jury may consider in determining whether he was careless, and unless explained it is indicative of his negligence. Besides, if the exemption applicable to street cars were held to include the defendant, the practical results would be serious. Street railways are not chartered and granted locations in our public ways for the benefit of the promoters or owners. "The accommodation of travellers, of all who have occasion to use them, at certain rates of fare, is the leading object and public benefit, for which these special modes of using the highway are granted, and not the profit of the proprietors." *Commonwealth* v. *Temple,* 14 Gray, 69, 76. *Attorney General* v. *Metropolitan Railroad,* 125 Mass. 515, 517, 518. *Pierce* v. *Drew,* 136 Mass. 75, 81. *Lorain Steel Co.* v. *Norfolk & Bristol Street Railway,* 187 Mass. 500, 503.

It is common knowledge that passengers generally leave street cars from the right hand side, whether the cars run on single or double tracks, which in cities and large villages usually are located

in the centre of thoroughfares where travel is most frequent. And
if the drivers of other vehicles are required to observe a street
car as being within the law of the road, passengers in alighting
will be freed from the needless hazard of personal injuries from the
undue proximity of vehicles passing in either direction. The not
infrequent condition requiring a prudent driver, if the tracks are
double, to ascertain whether a car is approaching on the parallel
track before turning his vehicle upon it, is but incidental to ordin-
ary travel in streets in which cars are being operated. If an
oncoming team were moving over the same area, he would be
required to use similar precautions to avoid a collision, or even
if necessary, to wait for it to pass. It may be suggested that
in some country roads and village streets, or perhaps in cities,
tracks are located at the extreme edge of the highway, where of
necessity passengers alight from the left hand side, and the in-
convenience of drivers of vehicles who wish to pass may be in-
creased, and the safety of pedestrians correspondingly imperilled.
The requirement, however, is only that the passing vehicle shall
"drive to the left of the middle of the travelled part" of the way,
and, as we have pointed out, where the jury find the circumstances
to be such that in the exercise of reasonable care the statute could
not be literally obeyed, no inference of negligence can be drawn.

If under modern conditions of travel in our congested streets
there is danger in requiring the driver of a carriage or other vehicle
passing another carriage or vehicle travelling in the same direc-
tion to "drive to the left of the middle of the travelled part of
a bridge or way," as is intimated in the dissenting opinion, yet
we cannot disregard the express requirement of the statute; it
is for the Legislature to provide a remedy.

*Exceptions sustained.*

The CHIEF JUSTICE and Justices HAMMOND and LORING ex-
press their dissent from the opinion of the majority of the court
by reason of their belief in the evil consequences to the public
travelling upon highways in trolley cars and other vehicles and
on foot which will arise from it. The only question involved is
whether, under R. L. c. 54, § 2, the driver of a motor or horse
drawn vehicle overtaking and passing an electric car going in the
same direction must leave it on his right or on his left. That

question has never been decided by this court. In *Burton* v. *Nicholson*, [1909] 1 K. B. 397, the law under consideration was different in its language and history from our statute, and the court there felt compelled to hold that other vehicles passing tramcars must observe as to them the law of the road, although recognizing that so construed it was almost impossible "to be obeyed in a reasonable manner in practice." Within less than four months after that decision the order was annulled by the legislative body. See Statutory Rules and Orders for 1909, p. 497.

A penal statute ought not to be interpreted so that it cannot be reasonably obeyed, or so that it will require further legislation to make it workable, unless no other course is open. We think it is plain that it was not the intent of the Legislature to include electric cars or horse cars within the law of the road, and for these reasons:

1. It is shown by the history of the statute. The first statute as to the use of the road by travellers in carriages and other vehicles was St. 1820, c. 65. This act contained regulations as to travellers meeting upon the highway, but none as to travellers going in the same direction passing one another. It was embodied in substance in Rev. Sts. c. 51, without change. When the General Statutes were enacted § 2, now under consideration, appeared for the first time, and another section, numbered 5, was added stating expressly that the provisions of the chapter should not apply to horse railroads. Gen. Sts. c. 77. The reason for this undoubtedly was that the first statutes authorizing the construction of horse railroads were passed in 1853, and a considerable number had been passed before 1860. Gen. Sts. c. 77 appears substantially without change in Pub. Sts. c. 93. The commissioners for consolidating and arranging the Public Statutes, in their report of 1901, append to c. 54 a note to the effect that they have omitted § 5 "as superfluous. The history and subject matter of this chapter show that it has no application to railways, whether operated by animal power or by electricity." The law of the road as reported by the commissioners was adopted without change by the Legislature, which means that the report and note were approved. Hence the purpose of the Legislature in omitting from the law of the road in the Revised Laws the express exemption of horse cars and by necessary implication of

electric cars, which had been in the two immediately preceding compilations of the statute law, was not to change in any respect the law as it had been for more than forty years. The primary significance of the exemption of horse railroads in Gen. Sts. c. 77, and in Pub. Sts. c. 93, is that the drivers of the cars of horse and electric railways are not bound to observe the law of the road. An equally necessary conclusion, however, is that such cars are not to be regarded as carriages or vehicles by other travellers. To say that the statute "shall not apply to" such cars is equivalent to saying that they are not "carriages" or "other vehicles" within the meaning of those words in the statute. They are exempted from the section touching the passing of one carriage or vehicle by another going in the same direction as much as from the section concerning those which meet going in opposite directions. They are excepted out of the statutory provisions both as objects and subjects of travel.

2. There are in the Commonwealth many miles of electric railways constructed upon the side of highways. It is impossible to treat the law of the road as applicable to cars upon tracks so laid. The Legislature cannot have intended to make the law of the road applicable in case of cars when it is impossible to obey it in these not infrequent instances where tracks are laid on the side of public ways.

3. The travelling public almost universally, according to our observation, has construed the statute in practice as not applying to street cars. When a statute regulating the daily conduct of thousands of people has received an interpretation by substantially universal custom, it ought not to be set aside unless strongly required.

4. The public construction of the meaning of the statute secures a far larger degree of safety than any other interpretation. There is no danger to any traveller in the careful passing by any vehicle to the right of an electric car going in the same direction, while there is or may be great peril in passing to the left, from behind the obstruction to sight and hearing, which an electric car usually is, into the face of other traffic. The passenger alighting from the street car, either on the right or left side, is protected by the general requirement of due care from other travellers.

5. It is well nigh impossible to obey the statute interpreted

in any other way. Heavily loaded vehicles on congested streets must be almost constantly violating the law, see *Bryant* v. *Boston Elevated Railway*, 212 Mass. 62, or else cause great and unnecessary congestion of traffic. Many car tracks are laid in the centre of roads where there is not room for two motor cars or carriages to pass on one side of the tracks. To require an overtaking automobile or carriage to drive to the left from behind an electric car into automobiles or carriages going in the opposite direction to say the least introduces confusion into travel, which may result in imminent hazard of injury.

6. The traveller alighting from the right hand side of a street car will be subjected under the other interpretation to the danger of vehicles approaching from a direction opposite to that in which the car is moving, while those alighting from either side must be prepared to avoid them coming from a direction to which they have been unaccustomed. The question is not whether the driver of an automobile should stop before passing a stationary car. That situation is not covered by the law of the road nor by this decision. It is governed by the general rules of negligence.

7. The other rule finds support in the provisions of R. L. c. 54, § 2, which if construed literally requires one vehicle passing another to do the very thing which has been shown to be inherently dangerous, namely, to go to the left of the middle of the way; that is to say, into that part of the way appropriated to traffic going in the opposite direction. In the crowded streets of cities not only is this not the rule observed in practice, but passing vehicles are never allowed in the left of the middle of the way, even if they cannot otherwise pass those in front of them. Whether this section should or should not be construed to apply to those ways only when there is only room for two vehicles abreast it ought not to be decisive of the question under discussion.

We think the ruling requested was refused rightly.