CHARLES L. JAMES *vs.* INTERSTATE CONSOLIDATED STREET
RAILWAY COMPANY.

Bristol.     October 24, 1906. — November 27, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence.     Street Railway.*

In an action against a street railway company for personal injuries, if the plaintiff
testifies that, late in the afternoon of a day in December when it was very dark,
he was driving in a heavy express wagon, ten feet long, and swung his horse
around upon the track of the defendant's railway for the purpose of backing up
in front of a house to unload a barrel of flour, that before doing so, and also as
he swung his horse around, he looked and listened in both directions and saw
no car and heard no noise, gong or signal, and as he swung his horse back on
the track again for the purpose of backing up and unloading he saw, by means
of the light reflected on its side, a car approaching, without any headlight and
giving no signal of its approach, one hundred feet or one hundred yards away
and coming toward him fast, that he shouted to his horse to go ahead and the horse
got across the track but the back of the wagon was struck by the car and the
plaintiff was thrown out and injured, and if the motorman testifies that he rang
his gong and that when he saw the wagon driven by the plaintiff about fifty
feet ahead he shut off the power, reversed the motors and put on the air emer-
gency brake, and had reduced the speed of the car to ten miles an hour when
the collision occurred, and if both he and the conductor testify that the head-
light was lighted, the questions, whether the plaintiff used due care in the
management of his team and in his efforts to ascertain whether a car was
approaching and whether the defendant was negligent in the management and
equipment of its car, are questions of fact to be submitted to the jury.

TORT by the driver of an express wagon for personal injuries
caused by a collision with an electric car of the defendant.
Writ dated October 12, 1904.

In the Superior Court the case was tried before *Bell,* J.   The
plaintiff was a teamster driving an express wagon, and was about
to deliver a barrel of flour at the house of one Powers on the
west side of Washington Street, a public highway in Attle-
borough.   The horse driven by the plaintiff weighed about
fourteen hundred pounds and the express wagon was ten feet
long and four feet wide inside.   The accident happened between
5.15 and 5.20 P. M. on December 14, 1903, at a time when it was
cold and very dark.   The car that struck the plaintiff was going
north from Pawtucket to Attleborough, on the west side of

Washington Street. The plaintiff testified that when he drove up to Powers' house he stopped his wagon on the right hand side of the car track about four feet from the rail in the travelled part of the road, which was from sixteen to twenty feet wide at that point; that he went into Powers' house and ascertained where the flour was to be put, and then came back to his wagon for the purpose of backing up and taking out the barrel of flour; that there was no driveway in the Powers yard; that going into Powers' yard and coming out of it he had to cross the track, and that going and coming he looked both ways and did not see or hear any car approaching from either side; that he then mounted his wagon, spoke to his horse and started in a circle to the left; that his wagon was perhaps three or four feet beyond Powers' steps when he first stopped, and was facing north; that, as he circled around to the left after coming out of Powers' house and getting on his wagon, he looked and listened in both directions and did not see any car or hear any noise, gong or signal; that he looked and listened while he was in his wagon on the track; that his horse crossed the track as he was circling around, his horse swinging to the left, and that when he got him around he swung him back on the track again for the purpose of backing up and unloading; that, when the horse went over the track, part of the wagon remained on the track; that when he had got the body of the wagon on the tracks and part of the horse he saw a car approaching " without any headlight in front of it burning"; that it gave no signal of its approach ; that he was listening; that he saw it by the light reflected on the side of the car; that it might have been one hundred feet away or one hundred yards, when he first saw it; that he "could not rate" the speed of the car, but it was coming fast ; that he never saw one coming toward him any faster than that did; that he shouted to his horse to go ahead, and that the horse started ahead and got across the track but no part of the wagon could get across before the collision came; that about the forward wheels got over and that then the car struck the wagon; and that he was thrown out and received his injuries; that his horse was walking as he was circling around all the time ; that his wagon was a cut-under wagon, with a foot board, and that the seat was about six feet from the ground.

The defendant called as a witness the motorman in charge of the car, who testified, among other things, that as he approached the place of the accident the headlight was lighted and he could see it shining on the track ahead; that he rang his gong; that when he first saw the wagon driven by the plaintiff it was about fifty feet ahead of him; that he immediately shut off the power and reversed the motors and put on the air emergency brake; and that he had succeeded in diminishing the speed of the car from about twelve or thirteen miles an hour to about ten miles an hour when the collision occurred. The conductor testified that the front headlight, the rear platform lights and the inside lights of the car all were lighted; that the car was in first class working condition and was running smoothly; that he could not say that he noticed the reverse put on or any jerk of the car before the collision; that the car was going from twelve to fourteen miles an hour as it came down toward the Powers house just before the collision; and that nothing about the speed of the car or the motion of the car out of the ordinary attracted his attention just before the collision.

At the close of the evidence the defendant asked the judge to rule that upon all the evidence the plaintiff could not recover, and that the plaintiff was not in the exercise of due care at the time of the accident. The judge refused to rule as requested and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $3,525. The defendant alleged exceptions.

*F. S. Hall*, for the defendant.

*J. W. Cummings*, (*C. R. Cummings* with him,) for the plaintiff.

HAMMOND, J. As frequently happens in cases of this kind, the evidence as to many of the material points was very conflicting. We have carefully examined it, and are of opinion that the questions whether the plaintiff in the management of his team and in his efforts to ascertain whether a car was approaching used due care, and whether the defendant in the management and equipment of its car was negligent, were questions of fact and not of law. The case was properly submitted to the jury.

*Exceptions overruled.*