JOHN JEDDREY *vs.* BOSTON AND NORTHERN STREET
RAILWAY COMPANY.

Essex.    November 25, 1907. — March 9, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence,* Street railway, In use of highway·    *Evidence,* Opinion.

At the trial of an action of tort against a street railway company to recover for
personal injuries received by the plaintiff from being thrown from an ice wagon,
which he was driving, because of an electric car of the defendant running into
the wagon, there was evidence tending to show that the plaintiff was driving the
wagon for his employer, and that, together with its load, the wagon weighed
about four and a half tons, that it had no springs and no cut under; that the
plaintiff was driving with two horses on the extreme right side of a principal
street of a city, upon which were double tracks of the defendant, and, arriving
opposite to the office and barns of his employer, which were on the other side of
the tracks, he received a signal to turn in ; that, thereupon, he looked from his
seat backward along the side of the wagon, got a view of the defendant's track
for two or three hundred feet, neither saw nor heard a car, and then began to
cross the track ; that the horses and the fore part of the wagon had got across the
track when the car, which came from the same direction from which the plain-
tiff had been driving, struck the rear wheel with such force that it made a loud
noise, tipped over the wagon, spilled the ice and forced some of it through the
front of the wagon, and carried the wagon along the track for five or ten feet;
that the car was running ten or twelve miles an hour and did not slacken its
speed before the collision, although there was an outcry from its passengers
when it was still thirty feet from the wagon, and that no gong or bell was
sounded on the car.    *Held,* that there was evidence of due care on the part of
the plaintiff and of negligence on the part of the defendant or its employees.

At the trial of an action of tort against a street railway company to recover for
personal injuries alleged to have been received by reason of a car of the defend-
ant running from behind into a wagon which the plaintiff, after having looked to
see whether a car was coming, was driving across the defendant's tracks, it is
competent for the plaintiff's counsel to ask the plaintiff, for the purpose of show-
ing that he did not believe that there was any peril in crossing the track as he
did, "At the time you crossed over, did you think there was any danger in
passing over as you did ? "

TORT for personal injuries received by the plaintiff by reason
of one of the defendant's electric cars running into an ice wagon,
which he was driving on Bridge Street in Salem, and throwing
him to the ground.    Writ in the Superior Court for the county
of Essex dated November 21, 1903.

There was a trial before *Wait,* J., who, at the close of the
plaintiff's evidence, directed a verdict for the defendant, and
the plaintiff excepted.

The facts are stated in the opinion.

The case was submitted on briefs.

*J. F. Quinn,* for the plaintiff.

*M. L. Sullivan,* for the defendant.

RUGG, J.   The plaintiff was driving an ice wagon on a principal street in Salem, in the centre of which were two parallel tracks of the defendant.   The street ran generally in an easterly and westerly direction, and the plaintiff was proceeding westward on the northerly side of the street.   He was driving a pair of horses attached to an ordinary covered, springless ice cart, with no cut under, weighing from two thousand eight hundred to three thousand pounds, which was loaded with about three and one half tons of ice.   His employer's office was on the southerly side of the street, and nearly opposite the place of accident.   The stables used in the ice business were about one hundred and fifty feet back from the street line and there were large scales in front of the stables, both to the west of the office building.   The horses and all but the rear part of the wagon had crossed and were clear of the northerly track, on which, in the same direction as that from which the plaintiff had driven, came the car which occasioned the injury.   The accident occurred at just before noon of a clear day.   There was evidence tending to show that the plaintiff was an experienced driver about fifty-nine years old; that, as he came along the street opposite to the office of his employer, he was signalled to cross the street; he looked " back out by the side " of the wagon to see if anything was in the way, " far enough back to see that it was perfectly safe to go over " perhaps " two or three hundred feet," and saw no car, and saw none until the wagon was struck; the horses were walking; one Porter, who signalled the plaintiff to come across, saw the car coming, and thought there was time for the plaintiff to go across in front of it; the plaintiff needed to be on the extreme right of the street in order to make a turn into the scales, because a dead axle, like that which he was driving, required much room to turn, and it was necessary to make a square turn and would not be a proper way to go diagonally across the tracks; the car was going at a speed of between ten and twelve miles an hour, and did not slow up at all until it struck the wagon. although there was an outcry by passengers when it was at a distance estimated from thirty

to fifty feet from the ice wagon; when the team was on the tracks, the car was thirty to forty feet away; the car struck the near rear wheel and tipped the wagon over on its side, spilling a good deal of the ice, making a very loud noise, and carrying the team along five or ten feet; the front of the wagon was broken by ice being shoved through it; the pole and one forward wheel were in good condition, but the rest of the wagon was badly broken; it did not appear that a gong or bell at any time sounded on the car.

The principles of law which govern this case have been recently and oftentimes stated. The street railway company has no exclusive right to occupancy of that portion of the highway on which its tracks are located. Other travellers in vehicles have an equal right to use this, as well as different portions of the way, not only for crossing but for progressing, subject only to the restriction that they must not unreasonably obstruct the street cars, which by the limitations of their construction and legal rights can proceed only on their rails. The duty of using reasonable care to avoid collisions rests upon all travellers alike, the trolley car as well as the ice wagon. Under some circumstances, it would not be unreasonable for the driver of a vehicle to deliberately drive upon a track under conditions which would compel the motorman of an electric car to abate its speed in order to avoid peril of injury. Under other circumstances, such conduct might be grossly negligent. The place in the street where the plaintiff attempted to cross the tracks of the defendant was a proper one for crossing, and, from the location of the office, scales and stable of his employer, one where the defendant might reasonably have expected heavy teams to cross frequently. The plaintiff was not oblivious of his own safety, but looked back a distance of two or three hundred feet before turning across the tracks, and saw no car. There was no evidence compelling the conclusion that the car was at that time within that distance and within his line of vision, and for this reason, if for no other, *Fitzgerald* v. *Boston Elevated Railway*, 194 Mass. 242, and *Beirne* v. *Lawrence & Methuen Street Railway*, 197 Mass. 173, are not in point. Whether he ought to have taken the precaution to look further or whether he could reasonably expect to get across before a car any greater distance away would reach him, or

whether he might rely upon the motorman's recognizing his reciprocal duty to avoid danger and slackening the speed of his car in time to prevent a collision, were all questions of fact to be weighed by the sound judgment of a jury.   That the plaintiff had nearly cleared the track before the rear of his team was struck, and that the speed of the car was not at all diminished before the collision were circumstances bearing both upon the due care of the plaintiff and the negligence of the defendant. The case falls within the class of which *Williamson* v. *Old Colony Street Railway*, 191 Mass. 144, *Driscoll* v. *West End Street Railway*, 159 Mass. 142, *Wood* v. *Boston Elevated Railway*, 188 Mass. 161, *Erb* v. *Boston Elevated Railway*, 191 Mass. 482, *Stubbs* v. *Boston & Northern Street Railway*, 193 Mass. 513, *James* v. *Interstate Consolidated Street Railway*, 193 Mass. 264, *Harris* v. *Fitchburg & Leominster Street Railway*, 193 Mass. 56, and *Halloran* v. *Worcester Consolidated Street Railway*, 192 Mass. 104, are examples, rather than that to which *Dunn* v. *Old Colony Street Railway*, 186 Mass. 316, and *Saltman* v. *Boston Elevated Railway*, 187 Mass. 243, belong.

The question put to the plaintiff, for the purpose of showing that he did not believe there was any peril in crossing the tracks as he did, namely, " At the time you crossed over did you think there was any danger in passing over the tracks as you did ? " seems to have been competent under *McCrohan* v. *Davison*, 187 Mass. 466, and *Whitman* v. *Boston Elevated Railway*, 181 Mass. 138, although, if all the circumstances and the fact that a judgment was formed by the plaintiff at the time were in evidence, a verdict might not be set aside for the sole reason that such a question had been excluded.   *Whitman* v. *Boston Elevated Railway*, 181 Mass. 138.   See 1 Wigmore on Evidence, 581.   The real question, however, is what a reasonably prudent and cautious man, exercising his faculties for his protection, would have done under all the circumstances, and not what the plaintiff thought, although the result of his deliberate judgment then formed may throw some light upon the subject.   No error appears in the exclusion of evidence as to custom of ice teams stopping and crossing the street on orders from the office.

*Exceptions sustained.*