MICHAEL S. DONOVAN vs. CONNECTICUT VALLEY STREET RAILWAY
COMPANY.

Franklin.    October 1, 1912. — November 25, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & DECOURCY, JJ.

*Negligence*, Due care of plaintiff, Street railway, Violation of town regulation.

Where the track of a street railway is laid on one side of the wrought part of a road
    of a town, the nearer rail of the track being less than twelve feet distant from
    the piazza in front of a store, and the driver of a delivery wagon employed by
    the proprietor of the store, after looking in both directions and seeing no car
    approaching, backs his horse and wagon across the track, dismounts from the
    wagon, lets down the tailboard, and, climbing into the wagon, proceeds to
    unload a barrel from it, when he hears a gong and almost immediately
    the team is struck by a car approaching at an excessive rate of speed and
    he is thrown out and injured, in an action for his injuries thus caused the
    question whether he was in the exercise of due care is for the jury to decide
    upon the evidence presented.
The violation by a street railway company of a regulation, established by the select-
    men of a town and approved by the board of railroad commissioners, concern-
    ing the speed of cars upon street railways in the town, is evidence of negligence
    in an action against the street railway company for personal injuries alleged
    to have been caused by a car of the defendant when running at an excessive
    rate of speed.

TORT for personal injuries sustained by the plaintiff on the
morning of October 9, 1906, on Deerfield Street in the town of
Greenfield, by being thrown from a delivery wagon which was
struck by a car of the defendant. Writ dated April 2, 1907.

In the Superior Court the case was tried before *Hardy*, J.
The plaintiff testified that on the morning he was injured he had
backed his wagon up in front of the store of his brother, Edward
Donovan, to unload a barrel of sugar which he had brought from
a storehouse. It appeared that Edward Donovan's store was
situated on the west side of Deerfield Street, and that the
defendant's track was laid through the wrought part of Deerfield
Street and past the store, and that the track was laid to the west
of the centre of the road. It also appeared that from the piazza
or porch in front of the store to the westerly rail of the defendant's
track was a distance of eleven feet and ten inches, that the wagon
in which the plaintiff was driving " was from five to six feet in

width, and that the team over all, including the horse, was sixteen feet in length."

According to the plaintiff's testimony, before turning to back his team across the track, he looked up and down the street for a car but saw none. He then backed his team across the track, dismounted from the seat, which was at the front of the wagon, passed around upon the north side of the wagon and unbuckled the tailboard, climbed in and laid his hands on the barrel and was going to twist it around to take it out of the end of the wagon, with his face to the south, when he heard the bell or gong of a car sounded behind him. Upon hearing the gong, which he testified was the first thing which attracted his attention to the approach of the car, he seized with his left hand the reins and slapped the horse with them at the same time speaking to the animal; as he spoke the car struck him and he was thrown from the wagon and rendered insensible. The car was coming from the north.

The plaintiff testified further that he had been employed for about a year as both a motorman and a conductor on the defendant's cars, that he left its employ about a year before the accident, and that for fully six months he had been employed upon the division of the railway passing his brother's store. He also testified that six regular cars of the defendant passed the place where he was injured at intervals every hour, besides several express cars during the day, and that he knew the running time of the cars on the defendant's road.

Edward Donovan testified that at the time of the accident he was in his store at work opposite a window out of which he could see up the hill to the north for four or five hundred feet along the track of the defendant. He heard and saw the car approach "at a good rate of speed." In about one half a minute he heard the bell on the car go "tap tap," and in the space of time that he could count five he saw the plaintiff thrown up in the air and the horse thrown on his knees out in the street.

Other material evidence is stated in the opinion. At the close of the evidence the defendant asked the judge to make the following rulings:

"1. That upon all the evidence the plaintiff cannot recover.

"2. That there was no evidence that the plaintiff was in the exercise of due care.

"3. That a person who stops his wagon upon the track of an electric street railway in daylight at a point from which he can see an approaching car for a distance of about seven hundred and seventy feet, and who makes no effort to remove his wagon until a car is within four or five feet of him is not in the exercise of due care.

"4. That a person having stopped his wagon upon the track of an electric street railway in daylight at a point from which he can see an approaching car from a distance of about seven hundred and seventy feet, then dismounts from the wagon, unstraps and lets down the tailboard, and then, without either looking or listening for an approaching car, climbs into the wagon from the rear, is not in the exercise of due care; unless he has so recently looked or listened for an approaching car that he cannot reasonably expect a car to reach the place occupied by the horse before he can remove from danger.

"5. That a person who climbs into a wagon harnessed to a horse, with no one at the moment in control of the horse, and the horse standing between the rails of an electric street railway, without looking or listening for an approaching car is not in the exercise of due care unless he has so recently looked or listened for an approaching car that he cannot reasonably expect a car to reach the place occupied by the horse before he can remove from danger."

The judge refused to make any of these rulings, and submitted the case to the jury with other instructions. The defendant excepted to the refusal of the rulings requested and to the charge so far as it was inconsistent with the defendant's requests for rulings.

The jury returned a verdict for the plaintiff in the sum of $366.66; and the defendant alleged exceptions.

The case was submitted on briefs.

*F. L. Greene & J. C. Lee,* for the defendant.

*F. J. Lawler,* for the plaintiff.

MORTON, J.   The plaintiff introduced evidence tending to show that on the morning of the accident he had backed up in front of his brother's store in Greenfield the delivery wagon which he had been driving, and was in the act of unloading a barrel of sugar therefrom, when the wagon was struck by one of the de-

fendant's cars and the plaintiff was thrown from the wagon, receiving the injuries complained of and to recover for which this action was brought. There was a verdict for the plaintiff, and the case is here on exceptions by the defendant to the refusal of the presiding judge to give certain rulings that were requested by the defendant.

It could not be ruled as matter of law that the plaintiff was not in the exercise of due care. He had the right to back his wagon up to the store as he did, and he testified that before doing so "he looked up and down the street for a car but saw none." It was for the jury to say whether, in view of the frequency with which cars came along the track, he should have looked again before or while attempting to unload the barrel, or whether he did all that could be done to avoid an accident after he heard the gong or saw the car. It was also for the jury to say whether, in view of the distance at which a car could be seen, he looked carelessly if he looked as he said he did, or whether, in view of some of the testimony as to the speed of the car, it was more probable that there was no car in sight when he looked. See *James* v. *Interstate Consolidated Street Railway*, 193 Mass. 264; *Kerr* v. *Boston Elevated Railway*, 188 Mass. 434; *Jeddrey* v. *Boston & Northern Street Railway*, 198 Mass. 232.

It could not be ruled as matter of law that there was no evidence of negligence on the part of the motorman. The rules and regulations established by the selectmen and approved by the board of railroad commissioners concerning the speed of cars upon street railways in Greenfield provided that no car should be operated at a speed greater than eight miles an hour along that portion of the street where the accident occurred. There was evidence tending to show that the car was running at the rate of twenty miles an hour. This was or could have been found to be of itself some evidence of negligence. *Stevens* v. *Boston Elevated Railway*, 184 Mass. 476. In addition, the same evidence which tended to show that the plaintiff should have seen the car tended also to show that the motorman in the exercise of due care should have seen the wagon in time to avoid a collision. There was also evidence tending to show that the gong was not sounded, and that the car was running at an excessive rate of speed, and that other regulations in regard to the operation

of the car besides those relating to speed, were violated by the motorman.

Whether the rails were wet and slippery. and the collision was due to that circumstance, and whether the motorman did all that he could to avoid the accident were likewise plainly questions of fact for the jury.  It seems to us that the case was rightly left to the jury.

*Exceptions overruled.*