BERTHA GIBSON *vs.* UNION STREET RAILWAY COMPANY.

WILLIAM E. GIBSON, administrator, *vs.* SAME.

Middlesex.  Bristol.  March 10, 1933. — June 28, 1933.

Present: RUGG, C.J., WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Negligence,* Street railway, In use of way, Motor vehicle, Contributory.

At the trial of an action of tort against a street railway company for causing personal injuries and the death of a passenger in an automobile, there was evidence that the automobile was travelling beside and to the left of the street railway track in the same direction as was a street car of the defendant; that the track of the defendant was outside the travelled way and was built like a steam railroad track, with ties and sleepers exposed except at driveways constructed for adjacent homes beyond the track; that, as the driver of the automobile approached one of such driveways when there was traffic on the roadway going in both directions, he gave a signal which, because of the traffic, the motorman of the street car could not see, reduced the speed of the automobile to eight miles per hour when about fifty feet from the driveway he intended to enter and, turning to his right, crossed in front of the street car; and that, less than two seconds later, the

automobile was struck at its rear wheel and was thrown about twenty feet, the street car continuing about one hundred thirty feet before it stopped. *Held*, that there was no evidence for the jury of negligence on the part of the defendant or its servants.

Two ACTIONS OF TORT. Writs dated November 12, 1929, and February 28, 1930, respectively.

In the Superior Court, the actions were tried together before *Walsh*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved in each action that a verdict be ordered in its favor. The motions were denied. There were verdicts for the plaintiffs in the sum of $2,000 and $3,000, respectively. The defendant alleged exceptions.

*T. F. O'Brien*, for the defendant.

*W. J. Bannon*, (*T. F. Bannon* with him,) for the plaintiffs.

LUMMUS, J. On the easterly side of a street in a sparsely settled district the defendant's track was built like a steam railway track, with ties and sleepers exposed, except that opposite certain houses on the easterly side of the street driveways across the track had been made, about a foot higher than the street, with a short rising grade as an approach to the rail and with filling between the rails.

On a bright Sunday afternoon in September two lines of automobiles, going in opposite directions, occupied the street, to the west of the track. The woman plaintiff and her husband's mother, of whose estate the other plaintiff is administrator, were passengers in an automobile going north and running about four feet westerly of the westerly rail at a rate of between twenty and twenty-five miles an hour. The driver intended to turn to the right across the track into one of the driveways. About fifty feet before reaching the driveway, he looked back through the rear window of the automobile, not using the mirror which would have given him a complete view, to see what was approaching. Through the rear window he could not see an electric car coming behind him if it were within one hundred feet. Seeing no electric car, he gave out of the left window a signal with his left hand (which because of

the line of automobiles an approaching motorman could not see), slowed down to about eight miles an hour, and without further looking or listening made a right-angled turn to the right into the driveway across the track. When the rear wheels of the automobile were on the easterly rail, the automobile was struck by an electric car going northerly, the woman plaintiff was hurt, and her husband's mother was killed. The driver heard no whistle or gong until just before the collision. The automobile was thrown about twenty feet, and the electric car went about one hundred thirty feet from the point of collision before it stopped. The foregoing summarizes the evidence for the plaintiffs.

The distance travelled by the automobile, from the time it began to turn until the collision, was not more than nine feet, in addition to the distance between the front and rear wheels of the automobile. At eight miles an hour, less than two seconds intervened between the turn and the collision. In view of the neighborhood and the elevation of the tracks, the defendant's motorman had no reason to · expect that the automobile would make such a sudden turn in front of the electric car which was in plain sight on a straight track. There was no direct evidence of the speed of the electric car or its distance from the automobile when the latter started to turn, except from witnesses for the defendant who placed the speed at twenty-five miles an hour and the distance at twenty-five feet. It was not disputed that the electric car was forty feet long and weighed seventeen tons without passengers. It could not be found that the effect of the collision or the distance travelled afterwards indicated excessive speed, especially in view of the undisputed testimony of the motorman that after throwing the automobile off the track he released the reverse lever and brought the car to a stop gradually in order not to throw his passengers off their seats. The fact that the electric car had overtaken the automobile is no evidence of undue speed, for the evidence does not show that the speed of the automobile shortly before the turn had been maintained for any distance. There was no evidence for

the jury of negligence on the part of the defendant or its servants, and the motions of the defendant for directed verdicts in its favor should have been granted. *Behmer v. Worcester Consolidated Street Railway*, 253 Mass. 494.

>*Exceptions sustained.*
>*Judgment for the defendant in each case.*