YOROSLOW M. STROTSKY *vs.* EASTERN MASSACHUSETTS
STREET RAILWAY COMPANY.

Bristol.   October 28, 1935. — November 26, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Negligence,* Street railway.

A finding of negligence on the part of the motorman of a street car was
not warranted by evidence that an automobile was forced by on-
coming traffic off a highway onto the nearer set of double street car
tracks adjacent to the highway, and proceeded on the nearer tracks
a short distance until it reached an intersecting way, where, instead
of turning to the left back onto the highway, it turned suddenly to
the right onto the farther set of tracks and was struck there by the
street car, which was proceeding in the same direction as the auto-
mobile had been, the motorman having been observing the automobile
but having made no attempt to stop the car until the automobile
turned suddenly.

TORT.   Writ dated May 14, 1932.

The action was tried in the Superior Court before *O'Con-
nell,* J.   There was a verdict for the plaintiff in the sum
of $5,244.   The defendant alleged exceptions.

*A. E. Seagrave,* (*A. E. Beaulieu* with him,) for the de-
fendant.

*H. E. Clarkin,* for the plaintiff.

PIERCE, J.   This is an action of tort arising out of a
collision between an automobile, operated by the plaintiff,
and a street car of the defendant.   At the close of the
evidence the defendant filed a motion that upon all the
evidence a verdict be directed for the defendant.   The mo-
tion was denied; the defendant duly excepted; the case
was submitted to the jury and the jury returned a verdict
for the plaintiff.

The evidence contained in the record in its aspect most
favorable to the plaintiff's contentions warranted the find-
ing of facts in substance as follows: The accident occurred

on December 25, 1931, at about 7:30 P.M. on Highland Avenue, the highway leading from Salem to Lynn. The highway and the street railway tracks are parallel to each other and run approximately northeast and southwest, the street railway location being outside the travelled way. There were two sets of tracks over which cars were operated, the Lynn-bound rails being farthest from the highway and the Salem-bound rails adjacent to it. The "T" rails were elevated about six inches above the roadbed of the location. At the time of the accident, no public roads crossed the tracks in the vicinity in question. The plaintiff was driving toward Lynn. He had driven over this road every Sunday and sometimes twice a week between Sundays, and had been over it many times at night. As he approached the scene of the accident he became blinded by lights of an on-coming automobile. There was a solid line of automobiles coming from Lynn toward Salem, and one automobile cut out of line and ran alongside of the main line. When it came close to the plaintiff "he pulled to the right to avoid probably hitting the car with a head-on collision. . . . at the time he pulled to the right he couldn't see the road in front of him very well on account of the very strong headlight" but "he then felt he was off the road and was hitting something" — "the railroad ties" — and "he applied his brakes and was proceeding slowly." He "couldn't tell just how fast he was going after he hit the rails but he had his brakes on. He couldn't swerve to the left because his tires were over the rails." His automobile "was not in a straight direction, not parallel with the rails, but a little bit sideways because he believed his right front wheel was also over the second rail of the first track." As he was going he saw "a road in front of him or dirt that was in between the tracks probably made for passing over the tracks by some of the people living inside of the rails." From the time he felt the bump until he got to the place where there was dirt filled in he travelled thirty or forty feet at about fifteen miles an hour. When "he came to the dirt he looked to the right . . . he didn't want to turn off the track" for fear of an upset. It was a misty night and he was afraid

he would not be able to get out of the tracks.   Before he started to turn to his right he looked and the road was clear in front of him; he then looked around to see if the car was coming and if he could pass over the second set of rails, but he saw no car or lights and heard no whistle or bell.   When he turned to the right there was an impact and he was struck by the electric car.   He was then on the second set of tracks, his automobile slanting about forty-five degrees, and he was travelling slowly, not more than ten miles an hour.   The reason he did not continue clear across this dirt that was between the tracks was that if he continued straight he would still have been between the tracks and he would not have been able to get out of them; and he did not turn to the left when he found himself in the tracks "because there were too many automobiles coming after him in the other direction."   Another reason "why he kept going straight until he hit the dirt and then turned to his right" was that he thought it would be easier for him, after he saw the road, to turn to the right and go on that road, then turn around some place there and come out again on his road to Lynn; and also that he could not very well turn to the left because his front tires were on the other side of the rails and they would not let him, that it would have been impossible for him to turn off the track because the rails were too high from the ground.   The plaintiff had passed an electric car before he got off the travelled way.   It was far back when he passed it, about a half mile.   He was not sure it was the car that collided with his automobile but he did not pass or see any other car up to the time of the accident.   The progress of the plaintiff's automobile was continuous from the time it left the travelled way until it was struck, and it travelled fifty to fifty-two feet from the time it came in contact with the first rail.   "It was just a minute before he [the plaintiff] turned to the right that he looked back, and he did not see the light of an electric car."

There were in evidence certain photographic exhibits of the locus and certain answers of the defendant to interrogatories propounded by the plaintiff.   From these ex-

hibits, from the answers of the defendant to the interrogatories and from the testimony of witnesses called by the defendant, the jury would be warranted in finding the facts descriptive of the accident which follow: The electric car that collided with the plaintiff's automobile was on the westerly or Lynn-bound track of a double track line entirely outside the travelled portion of Highland Avenue. The operator of the car first noticed the plaintiff's automobile when it was on its right hand side of the travelled portion of Highland Avenue, going in the same direction as the electric car and about a car's length ahead, with the easterly or Salem-bound track between the travelled way and the track on which the electric car was proceeding. The automobile continued on its course straight ahead on the right side of Highland Avenue for about six hundred feet after the operator of the electric car first saw it, then suddenly turned to its right, almost at right angles, left the travelled way and went onto the Salem-bound track and thence onto the Lynn-bound track at approximately a right angle, and was there struck by the electric car. After the automobile turned to its right onto the westerly car track the electric car travelled one hundred fifteen to one hundred twenty feet. At the time of the accident the electric car had got to the bottom of a long sweeping hill and it was going around a curve at the rate of thirty to thirty-five miles an hour in anticipation of the up grade which began at the curve. The operator of the car made no effort to stop the car until the plaintiff started to turn the automobile onto the Lynn-bound track. The automobile at the moment of turning to its right was ninety to one hundred feet in front of the electric car. The operator of the car testified that he did all that he could do to stop the car the moment he saw an indication of the automobile turning to the right. But he had sand that he did not use, and there was evidence that would have warranted a finding that he might have used more effective means to stop the car. There was evidence that he did nothing to stop the car while descending the hill although he saw the automobile pass upon the first track and saw it proceed to the

point where it crossed at an angle and went upon the second set of tracks.

The evidence for the plaintiff, above noted, established that the plaintiff travelled on the Salem-bound track thirty to forty feet at the rate of fifteen miles an hour, that his automobile then turned at an angle in front of an on-coming car on the Lynn-bound track, and went a distance of about twelve feet onto that track. The operator of the car had no reason to anticipate that the automobile proceeding on the first set of rails would seek to pass over the second set of rails rather than return to the highway from which this automobile had been driven. It follows that the operator owed no duty to the driver of the automobile to stop the car as it descended the hill or to act otherwise than he did act when the automobile was turned suddenly onto the second track and in front of the on-coming electric car. *Ducharme* v. *Holyoke Street Railway*, 203 Mass. 384, 395. *Larkin* v. *Boston Elevated Railway*, 253 Mass. 318. *Gibson* v. *Union Street Railway*, 283 Mass. 433.

It need not be considered whether or not the plaintiff was guilty of contributory negligence in leaving the Salem-bound track to pass upon the Lynn-bound track without greater care than he exercised to ascertain whether an electric car was approaching.

A verdict for the defendant should have been directed on the ground that in the circumstances the defendant owed no duty to the plaintiff which it failed to perform.

*Exceptions sustained.*
*Judgment for the defendant.*