JULIUS SIMPSON *vs.* LEO P. GAUTREAU.
SAME *vs.* HERBERT C. KASTNER.
APRIL 6, 1939.
PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.    These are two actions of trespass on the case
for negligence, the former against the operator of a motor

truck and the latter against his employer, the owner of the truck. The accident which is involved in both cases occurred in the city of Pawtucket in or just east of the intersection of Mineral Spring avenue, running about east and west, and Conant street, running about north and south.

The two cases were tried together before a justice of the superior court and a jury; and at the conclusion of the evidence for the plaintiff a motion for a nonsuit was granted in each case by the trial justice. The cases are now before us on exceptions by the plaintiff, namely, an exception to this ruling in each case and numerous other exceptions, nearly all of them being to rulings as to the admission of evidence.

Just to the south of the intersection, Conant street was approximately 21 feet wide from curb to curb; and just to the west of it, Mineral Spring avenue was approximately 30 feet wide from curb to curb. The avenue was much more heavily traveled than the street. A short time before the collision occurred, which was at about seven o'clock in the evening of November 24, 1933, the weather being clear, the plaintiff was operating a Chrysler sedan car easterly on the avenue and approaching the intersection at a speed of 20 to 25 miles per hour. At the southwest corner there was a house set back a considerable distance from Conant street, and a person located at a point on Mineral Spring avenue 10 to 15 feet west of the intersection had an unobstructed view southerly on Conant street for about 100 feet.

According to the plaintiff's testimony, when he was approximately at that distance from the intersection, he slowed down to a speed of not more than 18 miles per hour and looked to the south on Conant street and saw the lights of an approaching car, at a distance which he estimated to be over 100 feet. He then proceeded straight across the intersection at a speed of 15 to 18 miles per hour, without again looking to his right. His car had almost cleared the intersection when, from the mirror in front of him, he

perceived a flash of light in the rear of his car; and immediately afterward the truck owned by the defendant Kastner and operated by the defendant Gautreau, being the car the lights of which the plaintiff had seen just before he started to cross, crashed with great force into the rear of the plaintiff's car, which had then almost, if not entirely, cleared the intersection.

Another witness supported the plaintiff's story of how the accident occurred, and in particular testified that he saw the truck coming north on Conant street, when it was 75 to 100 feet away from Mineral Spring avenue, but could not estimate its speed, except that it was greater than that of the sedan; and that he saw no change in its course before its front right side crashed violently into the rear of the sedan.

A brother-in-law of the plaintiff testified to having had, soon after the accident, a conversation with the defendant Gautreau, in which the latter said, referring to the plaintiff's car: "To tell you the truth, I didn't see the machine until I was on top of it." No exception to this testimony was taken in behalf of either of the defendants. From the testimony of these two witnesses the jury could reasonably have found that the defendant Gautreau used no care to avoid a possible collision with any car that might be crossing Conant street on Mineral Spring avenue.

Therefore, the crucial question which we must decide, in passing upon the exception to the entry of a nonsuit in each case, is whether, on the uncontradicted evidence, the plaintiff was guilty of contributory negligence *per se,* or whether there was evidence from which the jury could reasonably have found that he was not guilty of contributory negligence. On the one hand are the facts that he drove his car into the intersection with the knowledge that there was a motor car to his right on Conant street, apparently coming toward the intersection at an unknown speed; that the plaintiff continued to drive across the intersection at a speed

of 15 to 18 miles per hour, without looking again to his right; and that his car was struck by the other car.

On the other hand, there was evidence from which the jury could reasonably have found that, when the plaintiff drove into the intersection, he had just looked to his right and had estimated that this other car was more than 100 feet away; that his car did not change its speed and had very nearly, if not entirely, cleared the intersection before the collision and only the rear end of the car was hit; that when it was passing the middle line of Conant street, it must have been practically straight ahead of the truck, which was being operated by the defendant Gautreau, with nothing to obstruct his view, and which must then have been far enough away so that, if he had used ordinary care, he could and would have slowed it down or steered it to the left and thus avoided the collision; but that he adopted neither of these precautions.

Correct rules of law governing cases, such as these, of collisions between automobiles at street intersections are well stated in the opinion in *Dembicer* v. *Pawtucket Cabinet & Builders Finish Co.*, 58 R. I. 451, 193 A. 622, beginning at page 456 (624), as follows: "The driver of an automobile intending to cross an intersection . . . should look when looking is efficient and take into consideration the circumstances attending at the time, such as the physical conditions at the intersection, the weather, road and light conditions, the relative importance of the streets or highways forming the intersection, the intensity and course of traffic, and the distance and speed of other vehicles that may be approaching that same intersection."

He must "look at the time and place when looking will seasonably apprise a reasonably careful person of the conditions confronting him at the intersection, so that he may control his actions accordingly . . . . He must look in the careful and efficient manner in which a man of ordinary prudence in like circumstances would look in order to ascer-

tain the existing conditions for his guidance .... The driver approaching the intersection from the left ordinarily must give way to the one coming from his right, unless efficient observation of existing conditions at the intersection would lead a reasonably prudent person to believe that he could safely clear the intersection."

It is also laid down in that case that the right-of-way rule is subject to the qualification that the exercise of such right under some circumstances may be entirely inconsistent with the exercise of due care. It is further stated as follows: "The question of contributory negligence is ordinarily one for the jury, unless it clearly appears that the only proper conclusion from the undisputed facts is that in the circumstances of the case a person of ordinary prudence would not have acted as did the plaintiff."

In a case where the plaintiff looked just before starting across a street intersection and saw an automobile approaching on the cross street at a considerable distance, there may well be a question for the jury whether an ordinary prudent man in the plaintiff's situation would have gone ahead in reliance on an expectation that the driver of the other car would exercise ordinary reasonable care to avoid running into the plaintiff's car.

We have in two cases discussed the basically similar question, which was involved in them, whether a pedestrian, who looked just before starting to cross a street or to cross a street railway track and saw a motor car or a street car approaching from a considerable distance, might, without being guilty of negligence, proceed to cross, without again looking at the car, in the expectation that such car would be operated with reasonable care for his safety. *Hemmerle* v. *Aldrich,* 58 R. I. 227, 192 A. 166; *Chagnon* v. *United Electric Rys. Co.,* 61 R. I. 275, 200 A. 949.

We came to the conclusion that this element should be taken into consideration, and that whether or not there was a question for the jury in such a case depended upon how

far away the car was, when the plaintiff looked and saw it, and at what speed it was then approaching. In each of those cases the plaintiff had proceeded considerably more than half way across before being struck by the car; and we held that it was a question for the jury to decide whether or not the plaintiff was guilty of contributory negligence.

A case that is much closer to the instant cases on the facts is *Jeddrey* v. *Boston & Northern St. Ry.*, 198 Mass. 232, 84 N. E. 316, which was a case of a collision, at a street intersection, between an ice wagon, driven by the plaintiff, and one of the defendant's street cars that struck the near rear wheel of the wagon. The direction by the trial justice of a verdict for the defendant was reversed.

At page 234 (316) the court says: "The plaintiff was not oblivious of his own safety, but looked back a distance of two or three hundred feet before turning across the tracks, and saw no car. There was no evidence compelling the conclusion that the car was at that time within that distance and within his line of vision . . . . Whether he ought to have taken the precaution to look further or whether he could reasonably expect to get across before a car any greater distance away would reach him, or whether he might rely upon the motorman's recognizing his reciprocal duty to avoid danger and slackening the speed of his car in time to prevent a collision, were all questions of fact to be weighed by the sound judgment of a jury. That the plaintiff had nearly cleared the track before the rear of his team was struck, and that the speed of the car was not at all diminished before the collision were circumstances bearing both upon the due care of the plaintiff and the negligence of the defendant . . . ." In our judgment the last two sentences just quoted state very well a rule that is applicable to such a case; and a similar rule should be applied in the instant cases.

The defendants in the instant cases seem to rely strongly on certain language in the opinion in *United Electric Rys.*

*Co.* v. *Pennsylvania Petroleum Products Co.,* 58 R. I. 305, 192 A. 749. But when that opinion is considered as a whole, we do not find that a decision in the instant cases that the plaintiff was improperly nonsuited would be inconsistent with it.

The defendants' attorney seems also to rely strongly upon *Correia* v. *Cambra,* 51 R. I. 472, 155 A. 667, which was a case where the plaintiff's motor car was struck by the defendant's motor car in the intersection of two highways, on which the two cars were respectively moving, and it was held that a verdict for the defendant had been properly directed by the trial justice. But in that case the plaintiff, *when he was 75 to 100 feet* from the intersection and moving slowly, saw the defendant's car approaching the intersection from his left and about 300 feet away. It was moving very fast, but he did not observe its speed. He formed the judgment that he could cross in safety and went ahead, apparently without increasing his speed. *He did not look again* at the defendant's car, and the collision occurred when the rear wheels of his own car were on the white line marking the center of the intersecting street.

The most obvious and important differences between that case and the instant cases are that the distance of the plaintiff from the cross street, when he last looked toward the defendant, was 75 or 100 feet in the former case and was only 10 to 15 feet in the instant cases, with an unobstructed view along the cross street; and that when the collision occurred in the former case, the plaintiff's car had not completely crossed the center line of the cross street, whereas in the instant cases the collision occurred when the plaintiff's car had passed almost, if not entirely, through the intersection, and only the rear end of his car was struck. These differences, justify, in our opinion, a different conclusion in the instant cases from that reached by this court in the former case.

In the instant cases we are of the opinion that there was

316

evidence from which the jury could reasonably have found that an ordinary prudent man, in the plaintiff's situation as he reached the intersection, would have expected the operator of the truck to see the car entering the intersection about 100 feet ahead of the truck and to use some care to avoid running into the car, and would, in reliance on such expectation, have entered and proceeded across the intersection without increasing his speed or paying any further attention to the truck. We are of the opinion also that the jury could therefore have reasonably found from the evidence that the plaintiff was not guilty of contributory negligence. It is clear also that the jury could reasonably have found from the evidence that the driver of the truck was guilty of negligence resulting in the collision.

Hence it is our conclusion that in each of these cases the trial justice erred in his ruling by which the defendant's motion for a nonsuit was granted, and that the plaintiff's exception to such ruling must be sustained. As this conclusion requires that each case be remitted for a new trial, it is unnecessary to sustain or overrule any exception to any other ruling of the trial justice.

In each case the plaintiff's exception to the ruling of the trial justice granting the defendant's motion for a nonsuit is sustained; and each case is remitted to the superior court for a new trial.

*Harold F. Hathaway,* of Mass. Bar, *Greenough, Lyman & Cross,* for plaintiff.

*William A. Gunning,* for defendant.