JOHN B. MARTURANO, administrator, *vs.* EASTERN
MASSACHUSETTS STREET RAILWAY COMPANY.

DONALD M. RYAN *vs.* SAME.

Essex.   February 8, 1940. — June 8, 1940.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Negligence,* Street railway: collision with vehicle; Motor vehicle; Con-
tributory.

Evidence of the range of lights forward and from side to side on a street
car approaching an intersection with a private way at a speed, un-
checked, of from thirty-five to forty miles an hour on a rainy night and
colliding with an automobile which had stopped near the tracks and
was slowly crossing them to enter the way warranted a finding of negli-
gence of the motorman.

A finding of contributory negligence of the operator of an automobile start-
ing from a stop and slowly crossing street railway tracks on a dark
rainy night after looking to his right rear and not seeing a street car
which struck the automobile after rapidly approaching from around a
curve several hundred feet distant, was not required by the evidence
as a matter of law.

Evidence did not as matter of law require a finding that a guest in an
automobile struck by a rapidly moving street car was guilty of contribu-
tory negligence either in entrusting himself to the care of the operator
of the automobile or in failing to see the car, which could have been
found not to have been in sight when the automobile started to cross
the tracks.

TWO ACTIONS OF TORT. Writs, in the first action in the
Superior Court dated September 22, 1936, and in the sec-
ond action in the District Court of Southern Essex dated
April 9, 1936.

On removal of the second action to the Superior Court,
the actions were tried together before *Williams,* J., who
ordered a verdict for the defendant in the second action
and, after the recording with leave reserved of a verdict
for the plaintiff in the first action in the sum of $5,775,
directed the entry of a verdict for the defendant in that
action.

*R. L. Sisk*, for the plaintiff Marturano, administrator.
*J. J. Foley*, for the plaintiff Ryan, submitted a brief.
*S. Parsons*, for the defendant.

Cox, J.   On December 15, 1935, at about nine o'clock in the evening an automobile driven by the plaintiff Ryan was in collision on Highland Avenue, Salem, with a street car of the defendant.   Ryan was injured, and his companion, Ellen Marturano, was killed.   Her administrator sues for death, a count for conscious suffering having been waived. Ryan's case is for personal injuries.   The cases were tried before a jury upon the reports of an auditor and other evidence.   At the conclusion of the evidence, the trial judge, subject to the plaintiff's exception, allowed the defendant's motion for a directed verdict in the Ryan case, and submitted the death case to the jury which returned a verdict for the plaintiff.   Thereafter the judge allowed the defendant's motion for entry of verdict for the defendant in the death case under leave reserved (G. L. [Ter. Ed.] c. 231, § 120), and the plaintiff excepted.   These exceptions present the only questions for decision.

Barcellona Avenue, an unlighted private way and "practically a rough narrow lane rarely used," leads to the right from Highland Avenue, a public way and main artery of travel, as one is proceeding from Salem toward Lynn.   The double tracks of the defendant are within the limits of Highland Avenue and on the northwesterly side of the travelled portion of the way.   These tracks are elevated about six inches from the roadbed and there is no travel over them in the immediate vicinity except at narrow entrances to private ways, including Barcellona Avenue, where the space between the tracks is graded to the level of the highway.

The jury could have found that on the night in question, Ryan and the deceased were driving from Lynn on Highland Avenue to Barcellona Avenue where they intended to park. It was dark and raining very hard.   They passed Barcellona Avenue without observing it, whereupon Ryan continued on about seven or eight hundred feet to a filling station, turned in, stopped, looked up and down the road, saw nothing and then proceeded back toward Lynn on Highland Avenue.

When he was five or ten feet from Barcellona Avenue, he turned his automobile a little to the right and stopped, with his right forward wheel eight or nine feet from the nearest rail. He testified that it was raining very hard; that he had the windows opened about an inch or two; that he looked to the right through the window in the front door and could see about six or seven hundred feet; that there was nothing coming; and that the window was "all wet but . . . you could see up the line." The lights of his automobile were on. After looking, he started at the rate of one to two miles an hour in first speed across the first rails, which were four feet eight inches apart, crossed the intervening space of five feet between the tracks, and was upon the Lynn bound track when the collision occurred. Ryan did not see the street car at any time. Although there was testimony from a civil engineer that the distance from Barcellona Avenue to the filling station was eight hundred fifty feet, and that there was an unobstructed view of one thousand feet toward Salem from that avenue, the jury could have found on other evidence that there is a sharp curve opposite the filling station and that at a point approximately nine hundred feet from Barcellona Avenue a ledge projects from the bank and cuts the view off "very quickly." Ryan testified that if he looked back toward Salem from Barcellona Avenue, he could see a brightly lighted trolley car if it was coming around the curve, "if it was there"; that he did not see it; that his view was about six hundred feet and that "you cannot see farther than the filling station because of the curve."

From the filling station there is a substantial downgrade for about three or four hundred feet, and then the grade rises and is somewhat sharp to Barcellona Avenue and beyond. The jury could have found that the street car was proceeding downgrade from the filling station at a rate of speed of from thirty-five to forty miles an hour; that before the collision it did not slow down; and that, after the collision, the automobile was pushed up the tracks about one hundred feet. The street car had a "golden glow" lamp which threw a light ahead from two to three hundred

feet. Its headlights shed light on either side of the car from thirty to forty feet and would show ahead at least three hundred feet. The motorman testified that he did not see the automobile until it got in front of him when he was probably twenty-five feet from it; that it was then upon the Salem bound tracks; that he did not know where it was before it turned; and that when he first saw it he applied sand, put on his emergency brakes, and shut off his power.

We are of opinion that it was for the jury to determine whether the motorman was negligent. The tracks were within the limits of the public highway, and, although Barcellona Avenue was a private way, the fact that travellers might turn into it could not be disregarded by the motorman. *Mahoney* v. *Boston Elevated Railway*, 271 Mass. 274, 278. In the operation of the car he did not have an exclusive right of way. He and the occupants of the automobile had the reciprocal rights and duties of travellers upon a public highway, subject only to the limitation that there should be no unreasonable interference with the progress of the car which, from the nature of things, could move only upon its rails. The motorman might anticipate that there would be no unreasonable obstruction of his narrow pathway, but he had no right to expect that it would be wholly unimpeded. *Jeddrey* v. *Boston & Northern Street Railway*, 198 Mass. 232, 234. *Callahan* v. *Boston Elevated Railway*, 205 Mass. 422, 423. *Sellon* v. *Boston Elevated Railway*, 208 Mass. 507, 509. *Farris* v. *Boston Elevated Railway*, 210 Mass. 585, 587. Upon the permissible findings as to the range of lights of the street car, both in the direction in which it was proceeding and to its sides, the rate of speed at which the automobile was travelling and its progress across the tracks, the rate of the unchecked speed of the car on the downgrade, and the conditions as to darkness and rain, it was for the jury to determine whether the motorman was operating his car reasonably, and whether he should have seen the automobile sooner than he did and at a time when he could have avoided the collision. *Fallon* v. *Boston Elevated Railway*, 201 Mass. 179,

181–182. *Salisbury* v. *Boston Elevated Railway*, 239 Mass. 430, 432. *Pitman & Brown Co.* v. *Eastern Massachusetts Street Railway*, 255 Mass. 292, 294, 296. *Cohen* v. *Eastern Massachusetts Street Railway*, 266 Mass. 283, 285. *Mahoney* v. *Boston Elevated Railway*, 271 Mass. 274, 277. The case is distinguishable from those on which the defendant relies, where the vehicle involved in the collision so suddenly and unexpectedly appeared upon the car tracks that it could be said, as matter of law, that the operator of the street car could not reasonably be held to have anticipated any possible collision in time to prevent it. See *Ducharme* v. *Holyoke Street Railway*, 203 Mass. 384, 395; *Anger* v. *Worcester Consolidated Street Railway*, 231 Mass. 163, 165; *Bohanon* v. *Middlesex & Boston Street Railway*, 237 Mass. 27; *Behmer* v. *Worcester Consolidated Street Railway*, 253 Mass. 494, 496; *Chatterton* v. *Eastern Massachusetts Street Railway*, 257 Mass. 550, 553; *Gibson* v. *Union Street Railway*, 283 Mass. 433, 435–436; *Strotsky* v. *Eastern Massachusetts Street Railway*, 292 Mass. 529, 533.

The defendant contends that Ryan was guilty of contributory negligence as matter of law under the rule stated in several cases, examples of which are *Fitzgerald* v. *Boston Elevated Railway*, 194 Mass. 242, 243, 244, and cases cited, *Cokinos* v. *Boston Elevated Railway*, 209 Mass. 225, 226, and *Emery* v. *New York, New Haven & Hartford Railroad*, 302 Mass. 578, 583. The physical facts that could have been found are not so clear as to show that the car was within Ryan's vision at the time when, according to his testimony, "there was nothing coming." *Jeddrey* v. *Boston & Northern Street Railway*, 198 Mass. 232, 234. *Foster* v. *Boston Elevated Railway*, 214 Mass. 61, 63. See *White* v. *Lewis*, 305 Mass. 450, 453. It cannot be said as matter of law that when he looked to the right, as he said he did, he should have seen the car. It is unnecessary to decide whether, if it was in sight, he was negligent in proceeding to cross the tracks. See *Fallon* v. *Boston Elevated Railway*, 201 Mass. 179, 182; *Salisbury* v. *Boston Elevated Railway*, 239 Mass. 430, 432–433, and cases cited. "Whether he ought to have taken the precaution to look

further or whether he could reasonably expect to get across before a car any greater distance away would reach him, or whether he might rely upon the motorman's recognizing his reciprocal duty to avoid danger and slackening the speed of his car in time to prevent a collision, were all questions of fact to be weighed by the sound judgment of a jury." *Jeddrey* v. *Boston & Northern Street Railway,* 198 Mass. 232, 234–235. *Foster* v. *Boston Elevated Railway,* 214 Mass. 61, 63. See *Newton* v. *Worcester Consolidated Street Railway,* 273 Mass. 490, 493, and cases cited.

The auditor found that the deceased was not in the exercise of due care at the time of the collision "as she failed to observe the approaching trolley car until a fraction of a second before the crash, when . . . [she] screamed, and I find that she entrusted her safety entirely to Ryan . . . ." He made a further finding that Ryan turned to his right without looking when he could have seen with certainty the trolley car, and he stated that there was "no evidence that the . . . [deceased] looked to the right as the . . . [automobile] turned across the trolley tracks or warned Ryan of impending danger." Apart from the auditor's report, the only evidence of the deceased's conduct came from Ryan who testified that he could not remember whether she looked to the right or not; that there was no talk between them at that time and that he could not remember that she said or did anything. The binding force and effect of an auditor's finding of fact, unshaken by other evidence, are settled. *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564, 566. Whether, in the circumstances, she was negligent in entrusting her safety to Ryan was for the defendant to establish. (G. L. [Ter. Ed.] c. 231, § 85.) There is no finding of the auditor that she was negligent in this respect and the record is silent as to this matter. *King* v. *Weitzman,* 267 Mass. 447, 449. In the circumstances, it could not have been ruled as matter of law that the deceased was guilty of contributory negligence in entrusting her safety to Ryan. *Bessey* v. *Salemme,* 302 Mass. 188.

The categorical finding of the auditor that the deceased was not in the exercise of due care, for the reason that she

failed to observe the approaching street car until a fraction of a second before the crash, is not conclusive in face of the permissible findings that the jury could have made upon the evidence introduced at the trial apart from the auditor's report. We are of opinion that it was for the jury to determine whether the deceased was negligent in failing to observe the approaching car. It could have been found that just before Ryan started to cross the tracks, no car was in sight. This being so, any observation on the part of the deceased at that time might well have been found to be unavailing. What, if anything, she should have done for her own safety was for the jury to determine, and, in the circumstances, it could not be ruled as matter of law that the deceased was guilty of contributory negligence.

It follows that the exception in the Ryan case is sustained; in the Marturano case the exception is sustained, the verdict for the defendant under leave reserved is set aside, and judgment is to be entered for the plaintiff on the verdict of the jury.

*So ordered.*